**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| MARY DOE, as next friend of minor plaintiff, JANE DOE, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Case No. 3:25-cv-00128 |
| ROBLOX CORPORATION and DISCORD INC., | § § § | |
| *Defendants.* | § § | |

---

**DEFENDANT ROBLOX CORPORATION'S**
**MOTION TO DISMISS COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Stage of Proceedings ............................................................................................. 2

Statement of Facts .................................................................................................. 2

    A.    Roblox and its Content Moderation Processes ........................................ 2

    B.    Plaintiff's Allegations ............................................................................... 4

Legal Standards ...................................................................................................... 6

    A.    Section 230 Bars Plaintiff's Claims ......................................................... 8

        1.    Roblox is a Provider of Interactive Computer Services ................. 9

        2.    Plaintiff's Claims Arise From Third-Party Content ....................... 9

        3.    Plaintiff's Claims Treat Roblox as a Publisher ............................. 10

    B.    The First Amendment Bars Plaintiff's Claims ....................................... 16

    C.    Plaintiff Fails to State Any Claim Against Roblox ................................ 18

        1.    The Negligence Claims Fail (Counts 2, 3, 4, 5) .......................... 18

        2.    Roblox's Platform is Not a "Product" (Counts 6, 7) ................... 24

        3.    The Fraud Claim Fails (Count 1) .................................................. 27

Conclusion ........................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.B. v. Salesforce*,
123 F.4th 788 (5th Cir. 2024) ....................................................................10, 11, 14

*A.B. v. Salesforce.com, Inc.*,
2021 WL 3616097 (S.D. Tex. Mar. 22, 2021)........................................................20

*Adams v. Nissan North Am.*,
395 F. Supp. 3d 838 (S.D. Tex. 2018) ...................................................................29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................6, 7

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2003) .......................................................................8, 11, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................7

*Bogard v. TikTok, Inc.*,
2025 WL 604972 (N.D. Cal. Feb. 24, 2025) ..........................................................16

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings LLC*,
572 S.W.3d 213 (Tex. 2019)...................................................................................28

*Coffee v. Google LLC*,
2021 WL 493387 (N.D. Cal. Feb. 10, 2021) ............................................................9

*Davidson v. Time Warner, Inc.*,
No. Civ. A V-94-106, 1997 WL 405907 (S.D. Tex. Mar. 31, 1997).......................25

*Davis v. Motiva Enters., L.L.C.*,
2015 WL 1535694 (Tex. App.-Beaumont Apr. 2, 2015, pet. denied) ....................14

*Doe (K.B.) v. Backpage.com*,
2025 WL 719080 .....................................................................................................13

*Doe No. 14 v. Internet Brands*,
2016 WL 11824793 (C.D. Cal. Nov. 14, 2016)..................................................19, 20

*Doe through Next Friend Roe v. Snap, Inc.*,
2022 WL 2528615 (S.D. Tex. July 7, 2022), *aff'd sub nom. Doe Through Roe
v. Snap, Inc.*, 2023 WL 4174061 (5th Cir. June 26, 2023) ....................12, 13, 14, 15

**TABLE OF AUTHORITIES**

(continued)

**Page**

*Doe v. Bates*,
    No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006)............................9

*Doe v. Boys Club of Greater Dallas, Inc.*,
    907 S.W.2d 472 (Tex. 1995)................................................................................23

*Doe v. Grindr*,
    128 F.4th 1148 (9th Cir. 2025) ...........................................................10, 13, 15, 16

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ........................................................................ *passim*

*Doe v. Roblox*,
    3:25-cv-03520 (N.D. Cal.).................................................................................28

*Dyroff v. Ultimate Software Group, Inc.*,
    934 F.3d 1093 (9th Cir. 2019) .......................................................................18, 29

*Est. of B.H. v. Netflix, Inc.*,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) .......................................................26

*Est. of Bride and through Bride v. Yolo Tech., Inc.*,
    112 F.4th 1168 (9th Cir. 2024) ......................................................................13, 14

*Etheridge v. Samsung SDI Co.*,
    604 F. Supp. 3d 556 (S.D. Tex. 2022) ...............................................................18

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021), *cert. denied sub nom. Doe v. Facebook, Inc.*, 142
    S. Ct. 1087 (2022)..............................................................................................9

*In re First Reserve Management L.P.*,
    671 S.W.3d 653 (Tex. 2023)..............................................................................18

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)...........................................................................10, 15

*Fresh Coat, Inc. v. K-2, Inc.*,
    318 S.W.3d 893 (Tex. 2010).............................................................................25

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ............................................................................27

*Herceg v. Hustler Magazine, Inc.*,
    565 F. Supp. 802 (S.D. Tex. 1983) ...................................................................26

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hondros v. Hewlett Packard Enter.*,
   2021 WL 5087144 (S.D. Tex. Nov. 2, 2021) ............................................................6

*Huddy v. Fruehauf Corp.*,
   953 F.2d 955 (5th Cir. 1992) .................................................................................17

*Jacobs v. Meta Platforms, Inc.*,
   No. 22CV005233, 2023 WL 265586 (Cal. Super. Ct. Mar. 10, 2023)...................26

*James v. Meow Media, Inc.*,
   300 F.3d 683 (6th Cir. 2002) .................................................................................26

*Jimenez v. Superior Ct.*,
   29 Cal. 4th 473 (2002) ...........................................................................................25

*Keane v. Fox Television Stations, Inc.*,
   297 F. Supp. 2d 921 (S.D. Tex. 2004), *aff'd*, 129 F. App'x 874 (5th Cir. 2005) ...................22

*Meador v. Apple, Inc.*,
   911 F.3d 260 (5th Cir. 2018) .................................................................................23

*Meyer v. Cathey*,
   167 S.W.3d 327 (Tex. 2005).................................................................................29

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974)...............................................................................................16

*Moncibaiz v. Pfizer, Inc.*,
   532 F. Supp. 2d 452 (S.D. Tex. 2021) ..................................................................18

*Moody v. NetChoice, LLC*,
   144 S. Ct. 233, 2024 WL 3237685 (July 1, 2024)..........................................16, 17

*Murphy v. Roblox*,
   3:23-cv-01940 (S.D. Cal.)......................................................................................27

*Murthy v. Abbott Lab'ys*,
   847 F. Supp. 2d 958 (S.D. Tex. 2012) ..................................................................18

*Nabors Drilling, U.S.A., Inc. v. Escoto*,
   288 S.W.3d 401 (Tex. 2009)..................................................................................18

*Nall v. Plunkett*,
   404 S.W.3d 552 (Tex. 2013)..................................................................................21

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Nathenson v. Zonagen, Inc.*,
  267 F.3d 400 (5th Cir. 2001) ................................................................7

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D Cal. 2022), *aff'd sub. nom. O'Handley v. Weber*,
  95 F. 4th 1145 (9th Cir. 2023) ............................................................17

*Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong)
  Co., Ltd.*,
  2012 WL 3260233 (S.D. Tex. July 12, 2012).........................................28

*Patrick v. Howard*,
  904 S.W.2d 941 (Tex. App.—Austin 1995, no writ).............................29

*Pierson v. Sharp Mem'l Hosp.*,
  216 Cal. App. 3d 340 (1989) ..............................................................24

*Quinteros v. InnoGames*,
  No. C19-1402RSM, 2022 WL 898560 (W.D. Wash. Mar. 28, 2022)....................26

*Riggs v. Apple, Inc.*,
  2017 WL 4018064 (Cal. Super. Ct. Aug. 24, 2017) ............................23

*Rodriguez-Escobar v. Goss*,
  392 S.W.3d 109 (Tex. 2013)................................................................22

*Schlumberger Tech. Corp. v. Swanson*,
  959 S.W.2d 171 (Tex. 1997) ...............................................................28

*In re Soc. Media*,
  702 F. Supp. 3d at 837 ........................................................................17

*Triplex Commc'ns, Inc. v. Riley*,
  900 S.W.2d 716 (Tex. 1995)................................................................18

*Tuchman v. DSC Commc'ns Corp.*,
  14 F.3d 1061 (5th Cir.1994) ..................................................................7

*Twitter, Inc., v. Taamneh*,
  598 U.S. 471 (2023)............................................................................23

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page**

*Way v. Boy Scouts of Am.*,
  856 S.W.2d 230 (Tex. App.—Dallas 1993, writ denied) .................................................24, 25

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ................................................................................................7, 27

*Ziencik v. Snap, Inc.*,
  CV 21-7292-DMG, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ..........................................26

**Statutes**

Communications Decency Act, 47 U.S.C. § 230 ................................................................... *passim*

Tex. Civ. Prac. & Rem. Code § 82.001 ......................................................................................25

**Other Authorities**

Fed. R. Civ. P.
  9(b) ...............................................................................................................................7, 27, 28
  12(b)(6) ...............................................................................................................................1, 6, 7

Restatement (Second) of Conflict of Laws § 156(2) (1971) .........................................................18

Restatement (Second) of Torts § 402(a) .......................................................................................24

Restatement (Third) of Torts
  § 19 .......................................................................................................................................25
  § 19(a) ...................................................................................................................................24

Defendant Roblox Corporation ("Roblox") files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and would show the Court as follows:

### INTRODUCTION

Nearly 20 years ago, the Fifth Circuit held that Section 230 of the Communications Decency Act ("Section 230") barred all claims arising from an online platform's alleged failure "to prevent sexual predators from communicating with minors on its Web site." *Doe v. MySpace, Inc.*, 528 F.3d 413, 416 (5th Cir. 2008). Plaintiff Jane Doe's theory of liability is exactly the same and is squarely barred by Section 230. Doe's claims all rest on the flawed premise that Roblox should be held liable for allowing her to communicate on Roblox with another user who allegedly had sexual intercourse with her at a later date. In other words, Doe seeks to hold Roblox liable for publishing (and not blocking or screening) their communications. Binding Fifth Circuit precedent forecloses this theory of liability.

Beyond Section 230, Doe's claims fail for independent dispositive reasons. *First*, all claims are barred by the First Amendment of the United States Constitution, which protects an online platform like Roblox's choices about what content to publish or not publish and whom to allow to speak. *Second*, Plaintiff's negligence-based claims (Counts 2-5) fail because there is no cognizable duty by an online platform to protect its users from the independent criminal acts of third parties. *Third*, all claims fail for failure plausibly plead proximate cause or reasonable foreseeability. *Fourth*, the product liability claims (Counts 6-7) fail because Roblox—an ephemeral online gaming platform—is not a "product" subject to product liability law. *Finally*, Plaintiff fails to allege actionable fraud (Count 1) because she fails to plead fraud with particularity, fails to identify a duty to

disclose any information that Roblox allegedly withheld, and fails to allege reliance on any alleged nondisclosure. The Court should dismiss the Complaint in its entirety.

## STAGE OF PROCEEDINGS

On April 30, 2025, Plaintiff, Mary Doe, as next of friend of minor plaintiff, Jane Doe filed a complaint against Defendants, Roblox Corporation ("Roblox") and Discord Inc., ("Discord"), alleging seven causes of action for fraudulent concealment, negligence, failure to warn, negligent design, negligent undertaking, and strict liability claims. Dkt. 1. On June 2, 2025, the parties stipulated to extend the deadline for Roblox and Discord to respond to the Complaint. Dkt. 16. The Court granted this stipulation on June 3, 2025. Dkt. 17. Concurrently with this Motion to Dismiss, Roblox files a Motion to Seek Early Discovery to evaluate the potential for arbitration for this matter. Dkt. 29. Although discovery may ultimately reveal that this case should be submitted to arbitration, Roblox files this motion to preserve all rights. Roblox expressly reserves the right to move to compel arbitration upon the discovery of facts necessary to support such a motion.

## STATEMENT OF FACTS

### A.    Roblox and its Content Moderation Processes

Roblox offers an online videogaming platform, including the Roblox app, on which users of all ages can play games, known as "experiences." (Dkt. No. 1) (Compl.) ¶¶ 13, 16. Users can communicate with one another through the platform via direct messages and "[g]ameplay interactions," such as in-experience chat visible to all players. *Id.* ¶ 15.

In 2019, when Plaintiff allegedly created her Roblox account, Roblox informed minors that they must obtain their parents' permission before signing up. *Id.* ¶¶ 21, 106.

Roblox provides "adjustable parental controls" that allow parents to customize their children's Roblox experience. *Id.* ¶ 106. Although Plaintiff does not specify what controls existed when she created her Roblox account or thereafter, the Complaint references a Help Center article titled "Safety Features, Chat, Privacy, and Filtering." *Id.* ¶ 121 n.128. The article explains how to: (1) "block other users that may be harassing, bullying, or spamming your child," (2) "report[] abuse," (3) "see what my child is doing on Roblox," including how to review their "direct and small group chat . . . histories," "private messaging history," "friends and followers," and "recently played experiences," (4) set up "account restrictions" to "lock an Account's Contact Settings to that no one can send messages, chat in-app or experience with the child," and (5) set up a "Parent PIN" to prevent any changes to the account settings unless the PIN is provided. *Id.*

Roblox employs other content moderation measures, including deploying thousands of human moderators to remove inappropriate content and using machine learning systems to scan and filter on-platform communications to help prevent the sharing of inappropriate content and personally identifiable information, and to prevent users from moving their communications to other platforms. *Id.* ¶¶ 34, 121-124. The Complaint gives examples of words that Roblox filters, including "Snap," "Snapchat," and "Discord." *Id.* ¶ 122. In November 2024, Roblox launched more safety features, including defaulting to preventing direct messaging for under-13 users, providing separate parental dashboards where parents can monitor their child's Roblox account activity, and restricting under-13 users from accessing Roblox games without maturity ratings. *Id.* ¶¶ 25, 132.

Although the Complaint devotes nearly 40 pages to selectively quoted statements from Roblox's website, interviews, securities filings, and news reports, *see* Compl. pp. 7–43, Plaintiff does not allege that she or her mother ever saw or relied on any of these statements.

### B.    Plaintiff's Allegations

Plaintiff is a 16-year-old Texas resident who allegedly created a Roblox account in 2019, when she was ten. Compl. ¶¶ 5, 10, 206. She is represented by her mother and next friend, Mary Doe, also a Texas resident. *Id.* ¶ 5.

Plaintiff's mother knew about her daughter's Roblox account and actively managed it on at least one occasion. *Id.* ¶ 207. At some point, the mother used Roblox's parental controls to "disable[] chat settings on Plaintiff's account due to fears about online interactions[.]" *Id.* The Complaint suggests that someone—it is unclear who—later enabled the chat settings on Plaintiff's Roblox account. *Id.* ¶¶ 207, 208, 211 (alleging that Plaintiff joined Roblox chatrooms).

Plaintiff claims she "was repeatedly exposed to dangerous situations" on Roblox, including by joining a Roblox chatroom where "random users started to list [Plaintiff's] Internet Protocol address and physical home address while simultaneously demanding nude photographs of her." *Id.* ¶ 208. Plaintiff does not allege that she ever sent nude photographs to anyone on Roblox, nor could she, as Roblox does not give users the capability to send photos or videos. *Id.* ¶ 110.

Plaintiff also used Discord, a separate communications platform owned by Defendant Discord Inc. *Id.* ¶ 209. On Discord, Plaintiff was allegedly "repeatedly sent sexually explicit images by predators . . . and was coerced into sending CSAM [child sexual abuse material] of

herself . . . on Discord." *Id.* ¶¶ 155, 210. Plaintiff then used Discord to seek "guidance from an online counselor whom she initially met on Roblox in a chatroom[.]" *Id.* ¶ 211. Plaintiff "continued communicating" with this person on Discord, and he allegedly eventually "convinced Plaintiff to send him CSAM of herself, and he sent Plaintiff sexually explicit images of himself." *Id.* ¶¶ 211–212. In the fall of 2024, the "online counselor" allegedly came to Plaintiff's house and slept over while her parents (unaware of his presence) were home. *Id.* ¶ 213. The next day, Plaintiff had sexual intercourse with him, which he recorded on his phone. *Id.* Soon thereafter, Plaintiff's mother saw her "walking on the street with an unknown adult male—the same man who had sex with Plaintiff—which resulted in an extensive criminal investigation." *Id.* ¶ 214. The Complaint alleges that "an arrest warrant was issued," but does not specify if the adult was indicted or convicted. *Id.*

Plaintiff's lone allegation about any interaction with the "online counselor" on Roblox is that they first communicated in a Roblox chatroom. *Id.* ¶ 211 & n.257. Plaintiff does not allege having any inappropriate conversations with this person on Roblox or that she ever exchanged CSAM with him on Roblox. *Id.* ¶¶ 211–212.[1]

Plaintiff asserts seven causes of action against Roblox: (1) fraudulent concealment, predicated on Roblox's alleged failure to disclose that "the app posed serious safety risks to child users," including "the risk of grooming, sexual abuse, sexual exploitation, and other serious risks," *id.* ¶¶ 218–233; (2) general negligence, based on the theories that (a) Roblox allegedly breached a duty not to create an unreasonable risk of harm from grooming … on its

---

[1] Plaintiff does not allege if the "online counselor" was an adult when she communicated with him on Roblox.

platform, or (b) Roblox owed a special relationship to Plaintiff to protect her from harm from other users, ¶¶ 237–259; (3) negligent failure to warn, for allegedly failing to warn Plaintiff and her parents about the general risks of grooming, sexual abuse, and sexual exploitation by other Roblox users, ¶¶ 260–279; (4) negligent design, based on the theory that Roblox negligently designed its platform with "features that specifically allow predators to find, groom, exploit, and abuse children," ¶¶ 280–302; (5) negligent undertaking, for allegedly failing to exercise reasonable care in "undertaking to render parental control and account safety services" "to prevent child users from being contacted by adult accounts or strangers' accounts," ¶¶ 303–321; (6) strict product liability – design defect, for allegedly distributing a "product" designed "to allow children to come into contact with child predators," ¶ 329; and (7) strict product liability – failure to warn, based on the theory that Roblox was in a "defective and unreasonably dangerous condition by failing to adequately warn about … a risk of grooming, sexual abuse, and sexual exploitation[.]" ¶¶ 350–369.

## LEGAL STANDARDS

A complaint must be dismissed if it fails "to state a claim upon which relief can be granted," based on "a dispositive issue of law." Fed. R. Civ. P. 12(b)(6); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (citation omitted). Dismissal also is proper if the complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Walker*, 938 F.3d at 734 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[P]lausibility" requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hondros v. Hewlett Packard Enter.*, 2021 WL 5087144, at *1 (S.D. Tex. Nov. 2,

2021) (citing *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Under Rule 9(b), fraud must be pled "with particularity." Fed R. Civ. P. 9(b). This "requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994)). "[T]he who, what, when, and where must be laid out before access to the discovery process is granted." *Williams*, 112 F.3d at 178. If a plaintiff fails to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent[,]" the claims will be dismissed. *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001) (quoting *Williams*, 112 F.3d at 177).

## ARGUMENT AND AUTHORITIES

Roblox requests that the Court dismiss the Complaint in its entirety because Section 230 and the First Amendment bar all claims, the Complaint fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and fails to plead fraud with particularity under Rule 9(b). Roblox's Motion is based on the following Argument and Authorities, as well as the records, pleadings, and papers on file in this action, and upon such other matters as may be presented before or at the time of the hearing on this Motion.

### A.    Section 230 Bars Plaintiff's Claims

Each of Plaintiff's claims rests on the flawed theory that Roblox should be held liable for allowing her to communicate with an alleged predator on Roblox. These claims fall within the heartland of Section 230, which bars claims against: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009); *see also Doe v. MySpace, Inc.*, 528 F.3d 413, 419–20 (5th Cir. 2008) (affirming dismissal of negligence claims arising from platform's alleged "failure to implement basic safety measures to prevent sexual predators from communicating with minors on its Web site").

Congress enacted Section 230 both to "promote the continued development of the Internet" and "to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material[.]" 47 U.S.C. § 230(b). To achieve these policy goals, "Congress provided ***broad immunity*** under the CDA . . . for all claims stemming from their publication of information created by third parties[.]" *MySpace*, 528 F.3d at 418.[2] Section 230 therefore reflects the Congressional choice to treat "[i]nternet publishers . . . differently[.]" *Id*. at 419 (citation omitted). "[S]o long as a third party willingly provides the essential published content, the interactive service provider receives ***full immunity*** regardless of the specific editing or selection process." *Id.* (citation omitted).

---

[2] Unless otherwise specified, all emphasis is added.

Thus, no matter how "artful[]" the pleading theory, any claim that is "directed toward [a provider] in its publishing, editorial, and/or screening capacities" is barred. *Id.* at 420. That is exactly the case here. Whether Plaintiff frames her claims as negligence, product liability, or fraud, each claim targets Roblox's publication of third-party content is barred by Section 230.

### 1.    Roblox is a Provider of Interactive Computer Services

Roblox indisputably provides "interactive computer services." *See* 47 U.S.C. § 230(c)(1). Plaintiff alleges that Roblox is "an online gaming app" that "allow[s] . . . users to communicate with each other." Compl. ¶¶ 13, 15; *see Coffee v. Google, LLC*, 2021 WL 493387, at *5 (N.D. Cal. Feb. 10, 2021) ("Websites are the most common interactive computer services.") (citation omitted).

### 2.    Plaintiff's Claims Arise From Third-Party Content

The Complaint makes clear that the allegedly objectionable content was "provided by another information content provider." 48 U.S.C. § 230(c)(1); *see* Compl. ¶ 208 ("While Plaintiff was in this chatroom, ***random users*** started to list her Internet Protocol address and physical home address while simultaneously demanding nude photographs of her."), ¶¶ 209-211 (describing communications between Plaintiff and "an online counselor whom she initially met on Roblox"). Where, as here, Plaintiff "asserts that someone other than Defendant created and developed the [content] at issue," this "as a matter of law constitute[s] 'information provided by another information content provider.'" *Doe v. Bates*, 2006 WL 3813758, at *17 (E.D. Tex. Dec. 27, 2006); *In re Facebook, Inc*., 625 S.W.3d 80, 86 n.3 (Tex. 2021) (sex traffickers' messages to plaintiffs via Facebook or

Instagram were "information provided by another information content provider"), *cert. denied sub nom. Doe v. Facebook, Inc.*, 142 S. Ct. 1087 (2022).

### 3.    Plaintiff's Claims Treat Roblox as a Publisher

Each of Plaintiff's claims seeks to impose a duty on Roblox, albeit under different labels, to "monitor, alter, or remove third-party content," or else face liability. *A.B. v. Salesforce*, 123 F.4th 788, 795 (5th Cir. 2024) (quoting *Force v. Facebook, Inc.*, 934 F.3d 53, 82 (2d Cir. 2019) (Katzmann, C.J., concurring in part and dissenting in part). Because the claims "necessarily implicate [Roblox's] role as a publisher of third-party content," Section 230 immunity applies. *Doe v. Grindr*, 128 F.4th 1148, 1151 (9th Cir. 2025) (Section 230 barred negligence, product liability, and misrepresentation claims where defendant's app allegedly matched adults and children for sexual activity, failed to warn of risk of child sexual abuse, and represented app was designed to create a safe environment).

In 2008, the Fifth Circuit held that Section 230 barred claims strikingly similar to Plaintiff's. In *Doe v. MySpace*, the plaintiff created a profile on a social networking site. 528 F.3d at 416. Although she was thirteen years old, the plaintiff represented she was eighteen, which allowed her "to circumvent all safety features of the [] site[.]" *Id.* As a result, the plaintiff's profile was made public, an adult user contacted her, they communicated online, and later met in person. *Id.* The adult sexually assaulted the plaintiff at this meeting. *Id.* The plaintiff's mother and next friend sued MySpace for negligence, alleging that the site "market[ed] itself to minors," took "supposed safety precautions and protections prohibiting anyone under 14-years-old from using MySpace," but failed to "enforce appropriate security measures" that would have prevented the plaintiff from lying about her age, connecting with

an adult, and being sexually assaulted by him. *Id*. at 417. The plaintiff specifically faulted MySpace for not "implement[ing] . . . age verification software" that would have prevented her from "ever meeting" her assaulter. *Id*. at 421. The Fifth Circuit held that MySpace was entitled to Section 230 immunity because "the[] allegations are merely another way of claiming that MySpace was liable for publishing the communications" and targeted "MySpace's role as a publisher of online third-party-generated content." *Id*. at 420.

The Fifth Circuit's logic remains correct. Indeed, it recently reaffirmed the vitality of "the *MySpace* analytical framework[.]" *See A.B.*, 123 F.4th at 794. That framework, consistent with the approach taken by the Ninth Circuit, asks "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Id*. at 795 (quoting *Barnes*, 570 F.3d at 1102). To help "a court detect when a plaintiff has engaged in the kind of artful pleading *MySpace* prohibits[,]" a court "can hypothesize what would happen if the allegations were true[.]" *A.B.*, 123 F.4th at 795. If the "duty would necessarily require an internet company to monitor, alter, or remove third-party content . . . then the claim is barred by section 230." *Id*. (citations omitted).

### a.    Section 230 Bars the Negligence Claims (Counts 2-5)

*MySpace* mandates dismissal of the negligence claims. The general negligence claim alleges that Roblox failed "to protect Plaintiff from unreasonable risk of injury from and in the use of its app[,]" specifically, the risk of "grooming, sexual abuse, and sexual exploitation." Compl. ¶ 237. Plaintiff essentially faults Roblox for allowing her to communicate with the "online counselor" because if Roblox had not published their

communications, they never would have met, and Plaintiff never would have been "sexual[ly] exploit[ed]." *Id.* ¶ 216.[3] The Fifth Circuit has rejected such "artful pleading," as it would require a defendant to change how it publishes third-party content. *MySpace*, 528 F.3d at 419-20. The Fifth Circuit recently affirmed dismissal of similar negligence claims against Snap, where a minor plaintiff allegedly was "groom[ed]" through in-app communications with his adult teacher, who plied him with drugs and repeatedly sexually assaulted him. *Doe through Next Friend Roe v. Snap, Inc.*, 2022 WL 2528615, at *1 (S.D. Tex. July 7, 2022) ("*Snap I*"), *aff'd sub nom. Doe Through Roe v. Snap, Inc.*, 2023 WL 4174061 (5th Cir. June 26, 2023) ("*Snap II*").[4] In *Snap I*, as here, the plaintiff alleged that by "allow[ing] for the widespread practice of using false birth dates," the defendant had "fostered an environment that draws in sexual predators and allows them to act with impunity." *Snap I*, 2022 WL 2528615, at *2. The court found that Section 230 barred all claims because they all "seek to fault Snap for information provided by a third party," specifically, the grooming "messages and photos" sent by the plaintiff's teacher. *Id.* at *1, *14 (cleaned up).

Section 230 similarly bars the negligent failure to warn claim, which is based on an alleged duty to warn about the risk of "grooming, sexual abuse, and sexual exploitation." Compl. ¶ 265. Courts have repeatedly held that where, as here, there is no allegation that a

---

[3] As in *MySpace*, the Complaint alleges that Roblox should have "implement[ed] effective protocols to verify ages . . . of all users[,]" Compl. ¶ 251. *See MySpace*, 528 F.3d at 421 ("Our complaint is [that] the two of them never should have been able to meet because MySpace could have implemented . . . age verification software[.]") (alteration in original).

[4] In *Snap I*, the plaintiff asserted claims for negligent design, negligent undertaking, and gross negligence. *Snap*, 2022 WL 2528615, at *2.

defendant has "independent knowledge of a conspiracy," its "role as a publisher of third-party content does not give it a duty to warn users of 'a general possibility of harm' resulting from the App." *Grindr*, 128 F.4th at 1154 (affirming that Section 230 barred failure to warn claim where minor plaintiff signed up for adult dating app that matched him with and shared his location with three men who later sexually assaulted him); *see also Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (affirming Section 230 dismissal of failure to warn claim because it "is essentially faulting [the defendant] for not moderating content in some way, whether through deletion, change, or suppression").

The negligent design claim is likewise barred. In *Bride*, 112 F.4th at 1180, the Ninth Circuit affirmed that Section 230 barred a negligent design claim premised on the defendant's alleged failure to "protect users from an unreasonable risk of harm arising out of the use of their app[,]" where the app's anonymity feature led to cyberbullying and the receipt of "obscene" sexual messages from other users. Similarly, in *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1064-65 (N.D. Cal. 2025), the court dismissed a negligent design claim premised on Meta's alleged failure to employ age verification, which allegedly would have prevented the plaintiff's sexual trafficking. In *K.B.*, as here, the "duty to include these challenged features . . . cuts to the core of [the defendant's] role as a publisher: that is, determining who can and cannot speak on its platform."

The negligent undertaking claim targets Roblox's publication of third-party content and is barred by Section 230: it seeks to impose a duty to "prevent child users from being contacted by adult accounts or strangers' accounts generally." Compl. ¶ 308; *see, e.g., Snap*

13

*I*, 2022 WL 2528615, at *14 (dismissing negligent undertaking claim predicated on failure to monitor third-party content); *Davis v. Motiva Enters., L.L.C.*, 2015 WL 1535694, at *4–5 (Tex. App.—Beaumont Apr. 2, 2015, pet. denied) (barring negligent undertaking claim against employer that logged and monitored employee computers but failed to prevent employee from launching "obscene cyber-strike campaign" against another employee). As the *Barnes* court recognized when dismissing a negligent undertaking claim, "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily treating the liable party as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1102–03. The same reasoning applies here.

### b. Section 230 Bars the Product Liability Claims (Counts 6-7)

Section 230 likewise bars the product liability claims, which "attempt to hold [Roblox] responsible for users' speech or [Roblox's] decision to publish it." *Bride*, 112 F.4th at 1179–80 (affirming Section 230 dismissal of product liability claim). The alleged "defect[]" is "allow[ing] children to come into contact with child predators." Compl. ¶ 329. Plaintiff asserts that Roblox could have remedied the alleged defect by, among other things, employing "[r]obust age and identity verification[.]" *Id.* ¶ 337. *MySpace* rejected the same argument in the context of negligence claims. *See MySpace*, 528 F.3d at 420.

Changing the name of the claim to "design defect" does not alter the analysis. *See, e.g., A.B.*, 123 F.4th at 795 (encouraging courts to "reach a plaintiff's specific allegations and the implications of those allegations," to "detect claims that seek to avoid section 230's grant of immunity [through] artful[] pleading"); *Snap I*, 2022 WL 2528615, at *14 (Section 230 barred product liability claim because "Snapchat's 'alleged lack of safety features is

only relevant to [Doe's] injuries to the extent such features would have averted wrongful communications . . . by third parties") (alterations in original) (citation omitted); *In re Facebook*, 625 S.W.3d at 93–94 (immunizing Facebook against design defect claims predicated on alleged failure to "'provid[e] adequate warnings and/or instructions regarding the dangers of 'grooming' and human trafficking' on its platforms" because the claims targeted "transmission of harmful third-party communications") (alterations in original); *Grindr*, 128 F.4th at 1153–54 (affirming that Section 230 barred defective design claim premised on defendant's alleged failure to prevent minor user from being matched with and communicating with adult rapists).[5]

### c.    Section 230 Bars the Fraud Claim (Count 1)

The fraudulent concealment claim is similarly premised on a duty to moderate third-party content, as it seeks to impose a duty not to "conceal[]" and "to disclose the defective conditions of its app and that the app posed serious safety risks to child users." Compl. ¶¶ 220–221. The Complaint makes clear that the allegedly "defective conditions" and "safety risks" consist entirely of third-party content: "grooming, sexual abuse, and sexual exploitation[.]" *Id.* ¶¶ 221–222, 226. As such, the fraud claim is simply an effort to "artfully . . . plead" around Section 230, which the Fifth Circuit has rejected. *MySpace*, 528 F.3d at 420.

Given the many cases holding that online platforms cannot be held liable for failing to warn about "the dangers of 'grooming,'" *see, e.g., In re Facebook*, 625 S.W.3d at 93–

---

[5] Plaintiff's failure to warn product liability claim suffers from the same defects as the negligent failure to warn claim. *See* Section E., *infra*.

94, *Snap I*, 2022 WL 2528615, at *14, because it would requires treating a defendant as a publisher—Plaintiff cannot plead around this limitation by changing the name of the claim to fraud. Furthermore, Plaintiff has not pointed to any "specific promise" by Roblox on which she (or her mother) relied. *See Grindr*, 128 F.4th at 1154. At most, Plaintiff describes Roblox's statements about its content "moderation policy," which are "protected from liability under § 230." *Id.*; *see also Bogard v. TikTok Inc.*, 2025 WL 604972, at *18 (N.D. Cal. Feb. 24, 2025) (Section 230 barred fraud claims premised on statements in defendants' community guidelines because "fulfillment of the duty . . . would necessarily require Defendants to change how they moderate content posted by third-parties—i.e. to remove all reported videos"). Section 230 therefore bars the fraudulent concealment claim.

**B.    The First Amendment Bars Plaintiff's Claims**

The First Amendment independently bars Plaintiff's claims, which challenge the "exercise of [a publisher's] editorial control and judgment." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). This includes a social media platform's "capacity to engage in content moderation—to filter, prioritize, and label the vari[ous] messages, videos, and other content their users wish to post." *Moody v. NetChoice, LLC*, 603 U.S. 707, 717 (2024).

In *Moody*, the Supreme Court explained that "[l]ike the editors, cable operators, and parade organizers" of the past, "major social-media platforms are in the business, when curating their feeds, of combining 'multifarious voices' to create a distinctive expressive offering." *Moody*, 603 U.S. at 738. And that "expressive offering" "derive[s] largely from the platforms' editorial decisions about which posts to remove, label, or demote." *Id.* at

738–39. "'The choice of material,' the 'decisions made [as to] content,' the 'treatment of public issues'—'whether fair or unfair'—all these 'constitute the exercise of editorial control and judgment." *Id.* at 738 (alterations in original) (quoting *Tornillo*, 418 U.S. at 258). "When the government interferes with such editorial choices . . . it alters the content of the complication[,]" and "confronts the First Amendment." *Moody*, 603 U.S. at 731–32; *see also O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1188 (N.D Cal. 2022) ("important First Amendment rights [] would be jeopardized by a [c]ourt order telling [them] what content-moderation policies to adopt and how to enforce those policies"), *aff'd sub. nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *In re Soc. Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 837 (N.D. Cal. 2023) (holding that the First Amendment protects publishers' decisions about what content to publish).

Here, Plaintiff faults Roblox for allegedly failing to implement adequate content moderation and related procedures to limit communications between certain users based on their age. *See, e.g.*, Compl. ¶¶ 251 (j)-(k), 271(c)-(e), (n), 294(d), 337(d). These claims are fundamentally about the "exercise of [a publisher's] editorial control and judgment," and as such, they are barred by the First Amendment. *Moody*, 603 U.S. at 738 (quoting *Tornillo*, 418 U.S. at 258). The Court should dismiss Plaintiff's claims for the independently dispositive reason that they are barred by the First Amendment.

**C.    Plaintiff Fails to State Any Claim Against Roblox**

    **1.    The Negligence Claims Fail (Counts 2, 3, 4, 5)**

Even apart from these federal protections, Plaintiff's claims fail as a matter of state law. Whether the claim is general negligence, failure to warn, negligent design, or negligent undertaking, Plaintiff fails to allege a cognizable duty by Roblox, precluding liability. Proximate cause—another required element of the negligence claims—also is lacking.[6]

    **a.    No Duty**

Plaintiff's negligence claims fail because each requires pleading the existence of a duty to exercise due care, and Plaintiff alleges no cognizable duty.

To state a claim for negligence under Texas law, a plaintiff must allege the existence of "a legal duty . . . a breach of that duty, and damages proximately caused by the breach." *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (citation omitted).[7] Under both Texas and California law, there is "no legal duty … to control the actions of a third persons absent a special relationship," which does not exist here. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995). *See also Dyroff v. Ultimate*

---

[6] Plaintiff does not specify what state law applies. The Fifth Circuit has held that the location of alleged injury is an "important factor" in determining the most appropriate law to apply. *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992). Under the Restatement, in tort cases, "the applicable law [will] usually be the local law of the state where the injury occurred." Restatement (Second) of Conflict of Laws § 156(2) (1971); *see Murthy v. Abbott Lab'ys*, 847 F. Supp. 2d 958, 966 (S.D. Tex. 2012). For these reasons, Roblox applies Texas law to Plaintiff's common law claims. However, California law—where Roblox is based and is the law required by Roblox's Terms of Use if the arbitration provision does not apply—also requires dismissal of the claims.

[7] Negligent design and negligent undertaking likewise require the existence of a legal duty. *See, e.g.*, *Moncibaiz v. Pfizer, Inc.*, 532 F. Supp. 3d 452, 461 (S.D. Tex. 2021) (under Texas law, negligent design claim involves a "duty . . . to design a product such that its use doesn't involve an unreasonable risk of harm[,]" and "the elements . . . are otherwise same . . . as traditional negligence . . . duty, breach, causation, and damages"); *In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 660 (Tex. 2023) ("The critical inquiry concerning the duty element of a negligent-undertaking theory is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist.") (citations omitted).

*Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."). "Nor is there a general 'duty to warn of dangers' from third parties." *Ethridge v. Samsung SDI Co.*, 604 F. Supp. 3d 556, 560 (S.D. Tex. 2022).

Plaintiff's negligence claims all seek to impose a duty on Roblox to prevent harm from third-party users, which is not a cognizable duty. The general negligence claim describes a duty not to create an unreasonable risk of harm from grooming, sexual abuse, and sexual exploitation on Roblox's platform, and alternatively asserts that Roblox "owed a special relationship to Plaintiff to protect her against harm caused by . . . other users." Compl. ¶ 238. The failure to warn claim similarly seeks to impose a duty to warn about the risks of grooming, sexual abuse, and sexual exploitation *by other Roblox users*. *Id.* ¶¶ 268–270. The negligent design claim is much the same; it targets a duty not to design a platform with "features that specifically allow predators to find, groom, exploit, and abuse children[.]" *Id.* ¶ 291. The negligent undertaking claim likewise targets a duty "to prevent child users from being contacted by adult accounts or strangers' accounts generally." *Id.* ¶ 313.

It is well-established that websites do not have a duty to prevent harm from (or warn about) other users. The district courts in *MySpace* and *Internet Brands* considered these precise issues and found no duty. *See Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 851 (W.D. Tex. 2007) (no duty under Texas law for website to "institute reasonable safety measures to protect minors from sexual predators"); *Doe No. 14 v. Internet Brands, Inc.*, 2016 WL 11824793, at *5 (C.D. Cal. Nov. 14, 2016) (no duty under California law on

19

social networking site to warn users of a rape scheme targeting "its member base at large"). In both *MySpace* and *Internet Brands*, the plaintiffs were sexually assaulted by other users.

The plaintiff in *MySpace* claimed that the defendant breached a duty to "institute and enforce security measures that would substantially decrease the likelihood that [plaintiff] would be sexually assaulted" by another user. *MySpace*, 474 F. Supp. 2d at 850 (internal quotations omitted). The court found no reason to depart from the general rule that "a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another." *Id.* (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)).[8]

Similarly, the plaintiff in *Doe No. 14* alleged that the owner of a modeling site had a duty to warn her that two men were engaged in a rape scheme where they would browse models' profiles on the site, contact them using fake identities, and lure them to fake modeling auditions to drug and sexually assault the victims on video. *Doe No. 14*, 2016 WL 11824793, at *1-2. Months after the defendant allegedly learned about the scheme, one of the men found the plaintiff's profile and lured her to a fake audition where he sexually assaulted her. *Id.* at *2. The district court dismissed the failure to warn claim because "[a]s a general rule, one owes no duty to control the conduct of another, nor to

---

[8] The court found that "MySpace had no duty to protect Julie Doe from Pete Solis's criminal conduct nor to institute reasonable safety measures on its website," and "[i]f anyone had a duty to protect Julie Doe, it was her parents, not MySpace." *MySpace*, 474 F. Supp. 2d at 852*; see also A.B. v. Salesforce.com, Inc.*, 2021 WL 3616097, at *4 (S.D. Tex. Mar. 22, 2021) (dismissing negligence claims against company that provided software services to entity known to be involved in sex trafficking, because "[i]n Texas, a business has no duty to . . . prevent [its customers] from engaging in criminal acts.").

warn those endangered by such conduct." *Id.* at *4 (alteration in original) (citation omitted). The courts likewise found no "special relationship" that would impose a duty to warn. *Id.* at *4–5; *accord MySpace*, 474 F. Supp. 2d at 850–51.

The same reasoning precludes imposing a duty here. Without duty, there can be no breach. Accordingly, Plaintiff's claims should be dismissed.

### b.   No Duty Via Negligent Undertaking

Nor can Plaintiff create a duty to "prevent child users from being contacted by adult accounts or strangers' accounts" through a negligent undertaking theory. Compl. ¶ 308. This claim is based on Roblox's alleged provision of "parental control [] and account safety services to Plaintiff's parents," which Plaintiff asserts were "necessary for the protection of minor users." *Id.* ¶¶ 305-306. Without detailing all the problems with this theory, Plaintiff fails to plausibly allege that in providing parental controls and safety features, Roblox ever undertook to prevent minor users from being contacted by adult accounts or strangers' accounts, or that Plaintiff (or her parents) relied on Roblox to do this.

Negligent undertaking requires establishing that: (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to fulfill its duty to exercise reasonable care in performing those services; and (3) the plaintiff either (a) relied on the defendant's performance or (b) the defendant's performance increased the plaintiff's risk of harm. *Nall v. Plunkett*, 404 S.W.3d 552, 555-56 (Tex. 2013).

The Complaint is devoid of any allegation that Roblox promised to prevent minors from ever being contacted by adult accounts or "strangers' accounts," whatever that term

means. In spite of the 40-plus pages of background contained in the Complaint, Plaintiff fails to identify a single statement by Roblox upon which she (or her parents) allegedly relied. The materials Plaintiff does cite reveal that Roblox provided various features, including instructions about how to: "block other users that may be harassing, bullying or spamming your child," and "report abuse." *Id*. ¶ 121 n.128. These materials expressly recognize that users—whether they are adults or minors—may send inappropriate communications to other users; otherwise, there would be no reason to "block" or "report" them. Any alleged undertaking to "prevent child users from being contacted by adult accounts or strangers' accounts" is therefore contradicted on the face of the Complaint and should be disregarded. Comp. ¶¶ 308, 311; *Keane v. Fox Television Stations, Inc*., 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004) ("[C]ourts are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.") (citations and internal quotations omitted), *aff'd*, 129 F. App'x 874 (5th Cir. 2005).

### c.    No Proximate Cause

The negligence claims fail for the additional reason that Plaintiff fails to plausibly allege that Roblox's conduct—as opposed to that of third parties—proximately caused her injuries.

"Proximate cause has two components: (1) foreseeability and (2) cause in-fact." *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). "For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred." *Id*.

22

Plaintiff's alleged injuries occurred at her parents' house at the hands of the adult who "exploit[ed]" her, not Roblox. Compl. ¶ 216. The only alleged link between Roblox and Plaintiff's injuries is that she initially "met" this person on Roblox. *Id*. ¶ 211. The causal chain between that first online meeting and the in-person misconduct is far too attenuated to establish proximate cause. Plaintiff "continued communicating with him on Discord," a separate platform, where she sent "CSAM of herself." *Id.* ¶¶ 211-216. She then gave this person her address, he traveled to her parents' house, someone let him in, he spent the night without her parents knowing, and the next day, they had sexual intercourse. *Id*.

Courts examining similar alleged chains of causation have found them inadequate and not reasonably foreseeable. For example, the court in *Meador* rejected a theory of liability premised on the claim that Apple had caused a car accident by failing to implement technology to disable incoming texts while driving, which allegedly caused the plaintiffs' deaths where the incoming driver was looking at a text message while driving. The court affirmed dismissal of negligence and product liability claims under Texas law for lack of proximate cause and declined to recognize "a smartphone's effects on its user as a cause at all." *Meador v. Apple, Inc.*, 911 F.3d 260, 265 (5th Cir. 2018); *see also, e.g., Riggs v. Apple Inc.*, 2017 WL 4018064, at *4 (Cal. Super. Ct. Aug. 24, 2017) (dismissing substantially similar claims under California law because "[t]he chain of causation . . . is far too attenuated"); *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477–78 (Tex. 1995) (dismissing negligence claims because organization's failure to screen a volunteer was not the cause in fact of the victims' sexual assault but only a "preliminary condition [of the] assaults" ); *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 501 (2023) ("The fact that

some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts. And . . . a contrary holding would effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them, [which would] run roughshod over the typical limits on tort liability[.]").

The attenuated factual circumstances underlying Plaintiff's claims fail as a matter of law. The Court should dismiss the negligence claims for failure to plead foreseeability or proximate cause.

### 2.   Roblox's Platform is Not a "Product" (Counts 6, 7)

Plaintiff cannot plead product liability claims against Roblox because its communication service is not a "product," and facilitating communication between users is not a product defect. *See* Compl. ¶¶ 326, 329 (alleging that Roblox "was designed and intended to be a gaming and/or communications product[,]" and that Roblox was "defectively designed its product to allow children to come into contact with child predators"). Courts have uniformly rejected the theory that products law applies to intangible services or decisions about whether to permit or remove content. Plaintiff's product liability claims fail as a matter of law.

The longstanding definition of a "product" is something that is "tangible." *Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 239 (Tex. App.—Dallas 1993, writ denied); *see also Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (Cal. Ct. App. 1989) ("product" for purposes of product liability law is "a *physical article* which results from a

manufacturing process and is ultimately delivered to a consumer"). Both the Second and Third Restatement of Torts impose the same tangibility requirement. *See* Restatement (Third) of Torts § 19(a) (defining "product" as "tangible personal property distributed commercially for use or consumption"); Restatement (Second) of Torts § 402(a) (defining listing product examples to include tangible items, such as tires, automobiles, and insecticides). The Texas Supreme Court has endorsed the view that the Third Restatement's definition of "product" comports with Texas's product liability statute. *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 897–98 (Tex. 2010); *see* Tex. Civ. Prac. & Rem. Code § 82.001.

Plaintiff does not claim a defect from a physical article and instead targets intangible aspects of Roblox's services: its facilitation of communication between users. Compl. ¶¶ 326, 329, 354, 356, 358. That is insufficient as a matter of law to give rise to product liability because "[s]ervices, even when provided commercially, are not products." *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 479 (2002) (citation omitted); *see also* Restatement (Third) of Torts § 19(b) cmt. f ("Courts are unanimous in refusing to categorize commercially-provided services as products.").

Extending product liability law to encompass the provision of intangible communication services between users would be unworkable and raise grave constitutional concerns. At bottom, Plaintiff seeks to hold Roblox liable for allowing her to communicate with another person: the "online counselor" in a Roblox chatroom. Compl. ¶ 211. Those communications—no matter how improper their intent turned out to be[9]—are still "ideas,

---

[9] Plaintiff does not allege that she sent or received CSAM on Roblox, nor could she, as Roblox does not provide the functionality to send videos or images.

thoughts, words, and information" that "are not products." *Way*, 856 S.W.2d at 239 (shooting sport magazine, which allegedly caused minor's death after he read articles about guns and obtained a rifle that accidentally discharged, was not a "product"); *see also Davidson v. Time Warner, Inc.*, 1997 WL 405907, at *14 (S.D. Tex. Mar. 31, 1997) (dismissing product liability claim alleging that violent rap song was a defective "product" causing criminal to fatally shoot police officer because plaintiffs "were not harmed by any physical properties of the audio tape"); *Herceg v. Hustler Mag., Inc.*, 565 F. Supp. 802, 803 (S.D. Tex. 1983) (dismissing strict liability claim against magazine that published asphyxiation article that allegedly caused plaintiff's son's death because content of magazine is not a "product"). This tangibility requirement ensures that product liability law does not lead to "significant constitutional problems under the First Amendment that ought to be avoided." *James v. Meow Media, Inc.*, 300 F.3d 683, 695, 700-01 (6th Cir. 2002); *see also Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (dismissing strict liability claim because it was "premised on the content and dissemination of the show," and "[t]here is no strict liability for books, movies, or other forms of media").

Courts around the country agree that product liability law does not apply in similar situations. *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (dismissing product liability claim while concluding, "as a social media platform that connects its users, Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat is not a "product"); *Intellect Art Multimedia, Inc. v. Milewski*, 899 N.Y.S. 2d 60, 2009 WL 2915273, at * (N.Y. Sup. Ct. 2009) (website not a product because claims "arise from the fact that the website

is a forum for third-party expression"). The same reasoning applies here and mandates dismissal of Plaintiff's product liability claims.[10]

### 3.    The Fraud Claim Fails (Count 1)

#### a.    Plaintiff Fails to Plead Fraud with Particularity

Plaintiff's generalized allegation that Roblox fraudulently concealed "the serious safety risks posed by the design of its app[]," Compl. ¶ 223, falls well short of the heightened pleading standard for fraud.

Federal Rule of Civil Procedure 9(b) requires a plaintiff "state with particularity the circumstances constituting fraud," and "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177. Although the Complaint cites various webpages, articles, and securities filings, Plaintiff does not cite a single statement by Roblox upon which she or her mother relied. This is fatal under Rule 9(b). *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009) ("without the precise contents of the misrepresentation the plaintiff cannot show he relied on the misrepresentation to his detriment").

---

[10] The product liability claims also fail because there is no plausible allegation that a defect in Roblox was the "producing cause" of the alleged injury. *See* TEX. CIV. PRAC. & REM. CODE § 82.005(a). Here, the "producing cause" was Plaintiff's interactions with the "online counselor," first on Discord, where they allegedly exchanged CSAM, and then in real life. Where, as here, there is a new and independent cause— a third party whose allegedly criminal actions were not foreseeable to Roblox—this destroys the causal connection. *See Penick v. Christensen*, 912 S.W.3d 276 (Tex. App. – Houston [14th Dist.] 1995) (affirming new and independent cause instruction in strict liability case); *Riggs*, 2017 WL 4018064, at*3-4 ("[W]here there is an independent intervening act that is not reasonably foreseeable, the defendant's conduct is not deemed the 'legal' or proximate cause.").

This pleading failure is particularly problematic because in 2019—the year Plaintiff allegedly created her Roblox account—Roblox's Parent's Guide disclosed the precise risks that Plaintiff claims were fraudulently concealed. *See* Request for Judicial Notice ("RJN") Ex. B ("Talk to your child about online grooming including what it is and what to watch out for … People with bad intentions may encourage children to 'meet' with them on other, less moderated social platforms").

In other cases brought by the same counsel, the plaintiffs have specifically alleged what Roblox materials they relied upon. *See, e.g., Murphy v. Roblox,* 3:23-cv-01940 (S.D. Cal.), ECF Nos. 47, 53 at 18-19 (post-Rule 9(b) dismissal, filing amended complaint alleging specific materials plaintiffs reviewed, including "the July 25, 2019 versions of the Parent's Guide landing page"); *Doe v. Roblox*, 4:25-cv-03520 (N.D. Cal.), ECF No. 1-1 ¶ 209 (referencing Roblox's 2019 Parent's Guide). A key purpose of Rule 9(b) is to avoid "leaving the Court to guess about . . . [what] . . . constituted fraud[.]" *Oldendorff Carriers GmbH & Co., KG v. Grand China Shipping (Hong Kong) Co.*, 2012 WL 3260233, at *7 (S.D. Tex. July 2, 2012). Roblox should not be required to guess, either.

### b.    Plaintiff Fails to Plead Fraudulent Concealment

Apart from failing to plead fraud with particularity, Plaintiff fails to establish any of the required elements of fraudulent concealment under Texas law.

Fraudulent concealment is only actionable if the plaintiff proves the defendant was silent when the defendant had a duty to disclose the correct information to the plaintiff. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). Thus,

28

"the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury." *Bombardier Aerospace*,  572 S.W.3d at 219–20. Plaintiff cannot satisfy these elements.

Plaintiff's failure to plead fraud with particularity infects the first element because without identifying what statements Plaintiff saw and relied on, it is impossible to determine what, if anything, was not disclosed, let alone whether those facts were material. *See supra* Section 3(a).

As to the second element, "[u]nder Texas law, a duty to disclose in the context of fraudulent concealment arises only in limited circumstances where there is a fiduciary or confidential relationship." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 849–50 (S.D. Tex. 2018); *see also Patrick v. Howard,* 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ) ("the cases where fraudulent concealment applies are ***rare***, such as those involving doctor-patient, attorney-client, or fiduciary relationships"). There is no such relationship between a website and its users. *See Dyroff,* 934 F.3d at 1101 (declining to create a "special relationship" between website and its users, and collecting authority); *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit.") (citation omitted).

As to the third element, Plaintiff fails to plausibly plead that she was ignorant of, or did not have an equal opportunity to discover, the allegedly concealed facts. Assuming that the concealed fact was that other users might send objectionable communications—this is the only action that allegedly took place on Roblox's platform—the Complaint makes clear that the potential for such conduct was disclosed by Roblox. Compl. ¶ 121 n.128 (providing instructions about how to "block other users that may be harassing, bullying or spamming your child" and "report abuse"). Furthermore, the Complaint makes clear that Plaintiff's mother was aware of the risks of "online interactions," and that she "disabled chat settings on Plaintiff's account." *Id.* ¶ 207.

Given Plaintiff's failure to identify any statement that she or her mother relied on, she cannot show reliance on any alleged nondisclosure. Nor does she allege facts establishing that Roblox was under a duty to disclose facts it failed to disclose. The Court should dismiss the fraudulent concealment claim.

## CONCLUSION

The Court should dismiss the claims against Roblox with prejudice.

Dated:  June 27, 2025                              COOLEY LLP


                                                  By:  /s/ *Tiana Demas*

                                                       Tiana Demas, Attorney in Charge
                                                       (*Pro Hac Vice*)
                                                       110 N. Wacker Dr., Suite 4200
                                                       Chicago, IL 60606
                                                       Telephone:  (312) 881-6500
                                                       tdemas@cooley.com

                                                       Matthew D. Caplan
                                                       (*Pro Hac Vice*)
                                                       Ryan C. Stevens
                                                       (*Pro Hac Vice*)
                                                       3 Embarcadero Center, 20th Floor
                                                       San Francisco, CA  94111
                                                       Telephone:  (415) 693-2000
                                                       mcaplan@cooley.com
                                                       rstevens@cooley.com

                                                       Attorneys for Defendant
                                                       ROBLOX CORPORATION