## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

**MARY DOE, as next friend of minor plaintiff, JANE DOE,**

      **Plaintiff,**

**v.**

**ROBLOX CORPORATION and DISCORD INC.,**

      **Defendants.**

**Civil Action No. 3:25-cv-00128**

## <u>DEFENDANT DISCORD INC.'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

BACKGROUND ......................................................................................... 3

    A.    DISCORD IS AN ONLINE COMMUNICATIONS PLATFORM ............. 3

    B.    DISCORD PROMOTES AND PROTECTS USER SAFETY ................... 3

    C.    PLAINTIFF SEEKS TO HOLD DISCORD LIABLE FOR
            FAILING TO BLOCK HER DAUGHTER'S MESSAGES WITH
            ADULTS ..................................................................................... 4

LEGAL STANDARD ................................................................................ 4

ARGUMENT............................................................................................. 5

    A.    SECTION 230 BARS ALL OF PLAINTIFF'S CLAIMS .......................... 5

          1.    Section 230 provides broad immunity for claims stemming
               from a service's failure to block content ............................................. 5

          2.    Section 230 bars Plaintiff's claims ..................................... 7

               a.    Discord is a provider of an interactive computer
                    service .......................................................................... 7

               b.    Plaintiff's claims each treat Discord as the publisher of
                    allegedly harmful content ...................................................... 7

               c.    The allegedly harmful content originated with third
                    parties, not Discord ............................................................. 13

    B.    THE FIRST AMENDMENT BARS PLAINTIFF'S NON-FRAUD
            CLAIMS ................................................................................... 14

    C.    PLAINTIFF FAILS TO ADEQUATELY PLEAD EACH OF HER
            CLAIMS ................................................................................... 15

          1.    Plaintiff's product liability and negligence claims (Claims 2–
               7) fail because Plaintiff has failed to adequately allege
               causation ...................................................................... 16

          2.    Plaintiff's product liability claims (Claims 6–7) fail because
               Discord is not a product and because the dangers of its use are
               obvious ........................................................................ 17

          3.    Plaintiff's negligence claims fail because Plaintiff cannot
               allege Discord owed her a duty (Claims 2–5) ..................................... 18

          4.    Plaintiff's fraudulent concealment claim fails (Claim 1) ............... 20

## TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ............................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*A.B. v. Salesforce, Inc.*,
   123 F.4th 788 (5th Cir. 2024) ............................................................. 6, 7, 8, 9

*A.B. v. Salesforce.com, Inc.*,
   No. 4:20-CV-01254, 2021 WL 3616097 (S.D. Tex. Mar. 22, 2021)
   ("*A.B. II*") ................................................................................................ 16, 19

*Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*,
   418 F.3d 600 (6th Cir. 2005) ..................................................................... 14

*Antonetti v. Activision Blizzard, Inc.*,
   764 F. Supp. 3d 1309 (N.D. Ga. Jan. 31, 2025) ........................................ 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 4

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ................................................................... 6, 10

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ................................................................... 5

*Bauer v. Gulshan Enters., Inc.*,
   617 S.W.3d 1 (Tex. App. 2020) ................................................................. 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 4

*Comcast Corp. v. Houston Baseball Partners LLC*,
   627 S.W.3d 398 (Tex. App. 2021), *aff'd sub nom. McLane Champions,*
   *LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907 (Tex. 2023) ...... 20

*Crosby v. Twitter, Inc.*,
   921 F.3d 617 (6th Cir. 2019) ..................................................................... 16

*D. Houston, Inc. v. Love*,
   92 S.W.3d 450 (Tex. 2002) ........................................................................ 16, 18

*Daughtry v. Silver Fern Chem., Inc.*,
   138 F.4th 210 (5th Cir. 2025) .................................................................... 21

*Doe v. Grindr Inc.*,
    128 F.4th 1148 (9th Cir. 2025) ............................................................... *passim*

*Doe v. Grindr, LLC*,
    No. 529404/22, 2025 WL 977367 (N.Y. Sup. Ct. March 25, 2025) ........................... 7

*Doe v. Kik Interactive, Inc.*,
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) ........................................................ 7

*Doe v. MySpace*,
    474 F. Supp. 2d at 852 ........................................................................ 19

*Doe v. MySpace*,
    528 F.3d 413 (5th Cir. 2008) ............................................................... *passim*

*Doe II v. MySpace Inc.*,
    96 Cal. Rptr. 3d 148 (Cal. App. 2009) ........................................................ 6

*Doe v. Twitter, Inc.*,
    No. 21-cv-00485-JCS, 2023 WL 8568911 (N.D. Cal. Dec. 11, 2023) ........................ 7

*Doe ex rel. Doe v. Grindr, LLC*,
    No. 5:23-cv-193-JA-PRL, 2023 WL 7053471 (M.D. Fla. Oct. 26, 2023) ................... 7

*Doe ex rel Roe v. Snap, Inc.*,
    No. 22-20543, 2023 WL 4174061 (5th Cir. June 26, 2023) ............................... 8

*Doe through Roe v. Snap, Inc.*,
    No. 22-20543, 2023 WL 4174061 (5th Cir. June 26, 2023) ............................... 6

*Doe (K.B.) v. Backpage.com, LLC*,
    768 F. Supp. 3d 1057 (N.D. Cal. 2025) ........................................................ 6

*Dyroff v. Ultimate Software Group, Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ....................................................... 13, 18, 20

*Estate of Bride v. Yolo Techs., Inc.*,
    112 F.4th 1168 (9th Cir. 2024) ........................................................... 10, 11

*Ethridge v. Samsung SDI Co.*,
    604 F. Supp. 3d 556 (S.D. Tex. 2022) ...................................................... 18, 19

*Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) .............................................. 6, 8, 13

*Festor v. Wolf*,
  No. SA-09-CA-0054-XR, 2009 WL 10669519
  (W.D. Tex. Aug. 24, 2009) ............................................................... 21

*Gerber v. Hoffmann-La Roche Inc.*,
  392 F. Supp. 2d 907 (S.D. Tex. 2005) ........................................... 16

*Herceg v. Hustler Mag., Inc.*,
  565 F. Supp. 802 (S.D. Tex. 1983) ................................................. 17

*Herrick v. Grindr, LLC*,
  306 F. Supp. 3d 579 (S.D.N.Y. 2018),
  *aff'd*, 765 F. App'x 586, 591 (2d Cir. 2019) ................................. 11

*In re Facebook, Inc.*,
  625 S.W.3d 80 (Tex. 2021) ........................................... 6, 9, 10, 11

*Jackson v. Airbnb, Inc.*,
  639 F. Supp. 3d 994 (C.D. Cal. 2022) ........................................... 18

*Jacobs v. Meta Platforms, Inc.*,
  No. 22-cv-005233, 2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ..................... 17

*Jane Doe No. 1 v. Backpage.com, LLC*,
  817 F.3d 12 (1st Cir. 2016) ................................................................ 6

*Klayman v. Zuckerberg*,
  753 F.3d 1354 (D.C. Cir. 2014) ..................................................... 19

*L.W. through Doe v. Snap Inc.*,
  675 F. Supp. 3d 1087 (S.D. Cal. 2023) ............................................ 7

*Lewis v. Time Inc.*,
  83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) ......................... 15

*Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
  810 F.3d 951 (5th Cir. 2016) ............................................................. 5

*M.H. v. Omegle.com, LLC*,
  No. 8:21-CV-814-VMC-TGW, 2022 WL 93575 (M.D. Fla. Jan. 10,
  2022), *aff'd*, 122 F.4th 1266 (11th Cir. 2024) ................................ 7

*Meyers v. Textron Fin. Corp.*,
  No. 4:11-CV-624-A, 2011 WL 4590796 (N.D. Tex. Oct. 4, 2011) ........................... 21

*Noel v. Roblox Corp.*,
   No. 3:24-cv-00963-JSC, 2024 WL 3747454 (N.D. Cal. Aug. 8, 2024) ...................... 2

*Ortiz v. Citimortgage, Inc.*,
   954 F. Supp. 2d 581 (S.D. Tex. 2013) ........................................................... 5

*Ripplinger v. Collins*,
   868 F.2d 1043 (9th Cir. 1989) ..................................................................... 15

*Rodgers v. Christie*,
   795 F. App'x 878 (3d Cir. 2020) .................................................................. 17

*Smith v. California*,
   361 U.S. 147 (1959) .............................................................................. 2, 14

*Stebbins v. Polano*,
   No. 21-cv-04184-JSW, 2022 WL 1601417 (N.D. Cal. Mar. 8, 2022) ...................... 7

*Stratton Oakmont, Inc. v. Prodigy Services Co.*,
   1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ........................................... 5, 6

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*,
   514 F. Supp. 3d 896 (W.D. Tex. 2021) ............................................................ 4

*Transcon. Ins. Co. v. Crump*,
   330 S.W.3d 211 (Tex. 2010) ........................................................................ 16

*Triplex Commc'ns, Inc. v. Riley*,
   900 S.W.2d 716 (Tex. 1995) ........................................................................ 19

*Tryon Hills Dev., LLC v. Lexington Ins. Co.*,
   No. 3:10-CV-1209-N, 2011 WL 13234827 (N.D. Tex. Mar. 16, 2011) .................... 21

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) .................................................................................. 18

*United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
   858 F.2d 534 (9th Cir. 1988) ................................................................... 14, 15

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994) .................................................................................... 14

*V.V. v. Meta Platforms, Inc.*,
   No. X06-UWY-CV-23-5032685-S, 2024 WL 678248 (Conn. Super. Ct.
   Feb. 16, 2024) ........................................................................................... 7

*Van Horn v. Chambers*,
   970 S.W.2d 542 (Tex. 1998) ...................................................................... 19

*Way v. Boy Scouts of Am.*,
   856 S.W.2d 230 (Tex. App. 1993), *writ denied* (Oct. 6, 1993) ................... 17

*Ziencik v. Snap Inc.*,
   No. CV 21-7292-DMG (PDx), 2023 WL 2638314
   (C.D. Cal. Feb. 3, 2023) ............................................................................ 17

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ....................................................................... 5

**Statutes**

47 U.S.C. § 230 ................................................................................................... 7

**Other Authorities**

Fed. R. Civ. 9(b) .............................................................................................. 21

Restatement (Third) of Torts: Prod. Liab. § 19(a) (1998) ................................ 17

S. Rep. No. 104-230 (1996) ................................................................................ 5

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case arises from the tragic exploitation of Plaintiff Mary Doe's teenage daughter, Jane Doe, by predators Jane Doe met on the Roblox platform, both of whom later sent Jane Doe sexually explicit messages on the Discord app. Although Defendant Discord Inc. works arduously to identify and prevent abuse of its app, it is not liable for failing to prevent every instance of harm and it cannot be held responsible for the actions of individuals who abused its platform. The Court should dismiss Plaintiff's claims with prejudice.

*First*, Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars the claims. Under the common law, an online publisher could be held liable for imperfectly policing user content but not for ignoring user content altogether. Congress designed Section 230 to remove the resulting incentive for publishers to turn a blind eye to harmful user material on their platforms. Section 230 provides broad immunity for claims that would require online publishers (like Discord) to monitor, screen, block, publish, or remove content created by third parties. But that is precisely what Plaintiff asks the Court to do. Whether by requiring Discord to block messages between adults and teens, implement tools that would require Discord to identify teens and block their access to the app without parental consent, or warn users of the risks that they may encounter harmful user content, Plaintiff asks the Court to hold Discord liable for failing to screen for and block the messages Jane Doe exchanged with her assailants. Every appellate court to consider similar theories, including the Fifth Circuit in factually indistinguishable cases, has rejected them. This Court should, too.

**Second**, the First Amendment independently bars Plaintiff's negligence and product liability claims. Under *Smith v. California*, 361 U.S. 147 (1959), Discord cannot be liable for transmitting illicit communications Plaintiff exchanged with adults unless Discord knew the character of the communications that made them unlawful. Plaintiff does not allege Discord had such knowledge, so the negligence and product liability claims fail for this reason as well.

**Third**, Plaintiff's claims fail as a matter of law. Plaintiff fails to adequately allege proximate causation, given the intervention of third-party conduct, requiring dismissal of her product liability and negligence claims. Plaintiff's product liability claims also fail because Discord is a communications service that transmits speech, not a tangible "product." Plaintiff's negligence claims fail because, under established law, Discord did not owe her a duty. Plaintiff fails to plead her fraudulent concealment claim with particularity and does not otherwise allege essential elements of the claim.

Because Section 230 and the First Amendment bar all of Plaintiff's claims, and because Plaintiff cannot cure the defects in the Complaint to allege any viable cause of action, the Court should dismiss the Complaint with prejudice.[1]

---

[1] Discord does not believe this action belongs in this forum and intended to file a motion to enforce the dispute resolution requirements in its Terms of Service (including the requirement to arbitrate) and to seek dismissal under Rule 12(b)(6) *only* in the alternative. Counsel for Plaintiff, however, has refused to provide Discord information about Mary or Jane Doe to bring such a motion, making a motion to enforce those provisions presently infeasible. Discord thus separately asks the Court to compel this information, which, as Plaintiff's counsel knows, is proper at this stage of a case. *See, e.g.*, *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1319-20 (N.D. Ga.) (granting motion to compel arbitration, criticizing as "gamesmanship" failure to confirm account information while simultaneously claiming defendant had not provided evidence of assent); *Noel v. Roblox*

## BACKGROUND

### A.    DISCORD IS AN ONLINE COMMUNICATIONS PLATFORM.

Discord is an "app that allows users to chat over voice, video, and text messaging." (Compl. ¶ 137.) Discord users may "post messages, upload files, and share images," as well as "send private messages via voice, video, or text." (*Id.*) They may also set up and join "servers" (*i.e.*, spaces for friends and communities to connect and chat) to communicate with each other. (*Id.*) Discord started as and remains at its core a community for gamers to communicate about their favorite games. (*Id.* ¶ 138.) Discord has more than 200 million monthly active users globally. (*Id.* ¶ 185.)

### B.    DISCORD PROMOTES AND PROTECTS USER SAFETY.

Discord goes to significant lengths to stop users from abusing its service. As the Complaint acknowledges, Discord has several tools in place to protect users, including, the "Family Center for Parents and Guardians," "Teen Safety Assist," and "Safe Direct Messaging." (*Id.* ¶¶ 153, 189, 196.)

Discord has repeatedly emphasized that it endeavors to maintain a "zero-tolerance policy" for people who endanger or sexualize minors. (*Id.* ¶ 146.) As the documents on which the Complaint relies make clear, about 15 percent of all Discord employees are

---

*Corp.*, 2024 WL 3747454, at *6 (N.D. Cal. Aug. 8, 2024) (requiring plaintiffs to disclose information necessary for Roblox to show assent to arbitration agreement). In no event does Discord waive its rights to enforce the dispute resolution requirements of the Terms, and any resolution of this motion to dismiss should follow consideration of any motion to compel arbitration.

dedicated to working on safety. (Exs. A–D.)[2] Discord also provides numerous resources for parents to better understand Discord's tools and services so they can create a positive and safe experience. (Compl. ¶¶ 146–48, 150.) Discord is open about these ongoing efforts, releasing periodic transparency reports that detail its safety efforts. (*Id.*) As those transparency reports indicate, Discord routinely reports accounts to the National Center for Missing and Exploited Children and removes those accounts from the service. (*Id.*; Exs. A–C.)

## C. PLAINTIFF SEEKS TO HOLD DISCORD LIABLE FOR FAILING TO BLOCK HER DAUGHTER'S MESSAGES WITH ADULTS.

Plaintiff claims men contacted Jane Doe through Roblox and then later Discord and manipulated her into sending them sexually explicit material. (Compl. ¶¶ 208–12.) One of the men escalated these communications, persuading Jane Doe to meet in person, during which he and Jane Doe had sex. (*Id.* ¶¶ 211–14.) An arrest warrant was issued for the man. (*Id.* ¶ 214.)

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it fails "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. And the failure "to

---

[2] On this motion, the Court may review the complaint, any documents attached to the complaint, and any documents attached to the motion, like Exhibits A through D, which are central to the claim and referenced in the complaint. *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co*., 514 F. Supp. 3d 896, 902 (W.D. Tex. 2021) (citing *Lone Star Fund V. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

assert a cognizable legal theory" is alone enough to grant a motion to dismiss. *Ortiz v. Citimortgage, Inc.*, 954 F. Supp. 2d 581, 585 (S.D. Tex. 2013). "Where [] the complaint involves an allegation of fraud, Federal Rule of Civil Procedure 9(b) imposes a higher standard on the complainant, requiring that he plead with particularity the circumstances constituting fraud." *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016) (internal quotation marks omitted). The Complaint fails to satisfy this standard.

## ARGUMENT

### A.   SECTION 230 BARS ALL OF PLAINTIFF'S CLAIMS.

#### 1.   Section 230 provides broad immunity for claims stemming from a service's failure to block content.

One of Section 230's primary goals is to "encourage service providers to self-regulate the dissemination of offensive material over their services." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997); *accord Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003) (citing 47 U.S.C. § 230(b)(4) and 141 Cong. Rec. H8469-70).

This self-regulatory approach rejects the common law principles that led a New York trial court to hold online service Prodigy liable for a user's defamatory comments. *See* S. Rep. No. 104-230, at 194 (1996) (expressing intent to overrule *Stratton Oakmont, Inc. v. Prodigy Serv. Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), and "any other similar decisions"). Because Prodigy actively screened and edited its bulletin board's messages to prevent offensive content, the court applied common law publisher (rather than distributor) principles, meaning that Prodigy could be held liable for posts even if it

5

did not know or have reason to know they were defamatory. *Stratton Oakmont*, 1995 WL 323710, at *5. By overruling this result, Congress eliminated the "grim choice" cases like *Stratton Oakmont* presented online services, i.e., that those that voluntarily filter content would be responsible for all posts, while "providers that bury their heads in the sand and ignore problematic posts altogether [would] escape liability." *Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) ("Roommates.com") (*en banc*).

Section 230(c)(1) accordingly provides online services immunity from claims that seek to hold them liable for publishing—or failing to monitor, screen, block, modify, edit, or remove—content provided by third parties. *See A.B. v. Salesforce, Inc.*, 123 F.4th 788, 795 (5th Cir. 2024) (citing *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009)).

Recognizing this, courts have repeatedly applied Section 230 to bar claims seeking to hold a service liable for the sexual exploitation of one user by another merely because the two met or exchanged messages using the service, regardless of what causes of action are asserted. *See, e.g.*, *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) (injuries suffered by minor who met adult abuser on site); *Doe through Roe v. Snap, Inc.*, 2023 WL 4174061 (5th Cir. June 26, 2023) (minor groomed on platform by high school teacher); *In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021) (sex trafficking of minors on platform); *Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025) (abuse of minor by adult); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) (similar); *Doe II v. MySpace Inc.*, 96 Cal. Rptr. 3d 148, 157 (Cal. App. 2009) (similar); *Doe (K.B.) v. Backpage.com, LLC*, 768 F. Supp. 3d 1057, 1067 (N.D. Cal. 2025) (similar); *L.W. through Doe v. Snap Inc.*, 675 F.

6

Supp. 3d 1087, 1101 (S.D. Cal. 2023) (similar); *Doe v. Twitter, Inc.*, 2023 WL 8568911 (N.D. Cal. Dec. 11, 2023) (similar); *Doe ex rel. Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. Oct. 26, 2023) (similar); *M.H. ex rel. C.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5 (M.D. Fla. Jan. 10, 2022), *aff'd*, 122 F.4th 1266 (11th Cir. 2024) (similar); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) (similar); *V.V. v. Meta Platforms, Inc.*, 2024 WL 678248 (Conn. Super. Ct. Feb. 16, 2024) (similar); *Doe v. Grindr, LLC*, 2025 WL 977367 (N.Y. Sup. Ct. Mar. 25, 2025) (similar). This authority requires dismissal of Plaintiff's claims, too.

### 2.    Section 230 bars Plaintiff's claims.

"Section 230 provides immunity when the defendant is (1) the provider or user of an interactive computer service and (2) treated as the publisher or speaker [(3)] of third-party content." *A.B.*, 123 F.4th at 792–93. These elements are satisfied in this case.

#### a.    Discord is a provider of an interactive computer service.

An interactive computer service is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). As courts have found, Discord is unquestionably a provider of an interactive computer service. *Stebbins v. Polano*, 2022 WL 1601417, at *3 (N.D. Cal. Mar. 8, 2022).

#### b.    Plaintiff's claims each treat Discord as the publisher of allegedly harmful content.

"[A]ny activity . . . that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."

7

*Roommates.com*, 521 F.3d at 1170–71. "To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *A.B.*, 123 F.4th at 795 (quoting *Barnes*, 570 F.3d at 1102). If the duty requires exercising editorial functions—such as "deciding whether to publish, withdraw, postpone or alter content"—Section 230 bars the claim. *A.B.*, 123 F.4th at 795.

The Fifth Circuit's decision in *Doe v. MySpace* is on point and dispositive. That case involved claims by a minor and her parents that the social networking website MySpace negligently failed to implement adequate safety features, including age verification software, to prevent the minor from using MySpace to communicate with an adult who later assaulted her. 528 F.3d at 416, 419–22. Holding that Section 230 barred those claims, the district court observed, and the Fifth Circuit agreed, that "the underlying basis of Plaintiffs' claims is that, through postings on MySpace, [the adult assailant and minor victim] met and exchanged personal information which eventually led to an in-person meeting and the sexual assault[.]" *Id.* at 419–20. Since the plaintiffs' negligence claims were "merely another way of claiming that MySpace was liable for publishing the communications," and since the only way MySpace could have avoided liability was by screening for and blocking the minor and her assailant from creating profiles and exchanging communications, Section 230 barred the claims. *Id.* at 420. The Fifth Circuit again held that that Section 230 bars such claims in *Doe ex rel Roe v. Snap, Inc.*, 2023 WL 4174061 (5th Cir. June 26, 2023).

The Texas Supreme Court applied Section 230 to dismiss similar negligence and

product liability claims in *In re Facebook*. The plaintiffs there—including minors who had been sex trafficked by criminals operating through the Facebook app—claimed Facebook should have "verif[ied] the identity and/or age of users," imposed "restrictions on eligibility for accounts," and "warn[ed]" of sex trafficking on its platforms. 625 S.W.3d at 85, 93–94. The court found these claims treated Facebook as a publisher because, whether "couched as failure to warn, negligence, or some other tort of omission," liability would "second-guess[] . . . Facebook's 'decisions relating to the monitoring, screening, and deletion of third party content[.]'" *Id*. at 93 (citation omitted).

So too in *Grindr Inc.*, where just this year the Ninth Circuit affirmed dismissal of negligence, product liability, failure to warn, and misrepresentation claims against the dating app Grindr for injuries a then-teenage plaintiff suffered after exchanging messages on the platform with an adult who he then assaulted him offline. 128 F.4th at 1151. Like Plaintiff, the plaintiff there theorized that Grindr's failure to prevent him from communicating with adult assailants breached a "duty not to design or manufacture defective products[."] *Id.* at 1153. And like Plaintiff, Doe argued that Section 230 did not bar his claims because they arose from Grindr's own "features and functions," not from user-supplied content. *Id.* But the Ninth Circuit disagreed, joining every other court to address this issue to hold that the harm the plaintiff allegedly sustained from those features resulted from the platform's role in facilitating the "sharing of messages between users that could lead to illegal activity." *Id.* "These claims necessarily implicate Grindr's role as a publisher of third-party content," the court explained, so Section 230 barred them. *Id*.

Plaintiff's claims are materially the same as those alleged in *MySpace*, *In re*

*Facebook*, and *Grindr*. A careful review of the Complaint demonstrates that the claims also seek to treat Discord as a publisher by imposing duties that would require Discord to more perfectly monitor, screen, block, and remove harmful content. *See A.B.*, 123 F.4th at 795 (citing *Barnes*, 570 F.3d at 1102).

***Negligence-Based Claims.*** Plaintiff's four claims sounding in negligence would all impose a duty on Discord to monitor and block the messages Jane Doe exchanged with adults. For example, Plaintiff faults Discord for (i) "structur[ing] and operat[ing]" its app in a way that makes harmful messages more likely; (ii) "[fa]cilitating unsupervised and/or hidden use" of its apps to exchange messages with adults; (iii) failing to "implement effective parent controls" and "effective parental notifications" that would require Discord to block or filter certain messages; (iv) failing to ban accounts associated with adults who misuse the service to message teens; (v) failing to "set default safety settings to the most protective options," which Plaintiff suggests would require Discord to block adults from communicating with teens with whom they have no connection; and (vi) offering an "open chat function" that permits teens to exchange messages with adults without sufficient moderation. Compl. ¶¶ 250–51; *see also id.* ¶¶ 271, 294, 303–321 (similar allegations as bases for negligent failure-to-warn, negligent design, and negligent undertaking claims).)

***Strict Product Liability Claims.*** Plaintiff's strict liability design claim, too, would require Discord to more perfectly screen for and block harmful content. (*Id.* ¶ 329 (alleging Discord "defectively designed its product to allow children to *come into contact with* child predators") (emphasis added), ¶ 337 (asserting Discord had a duty to enforce "effective parental controls" that, for example, would have required Discord to block or deter the

exchange of harmful messages; to set safety settings to the most "protective options" that would "block[] direct messaging between children and adult users" or "only allowing messaging between adult users and a child" with permission; to block content posted by "known abusers"; and to offer a more thoroughly moderated "[c]ontrolled chat" option).)

***Fraud and Failure to Warn Claims.*** Plaintiff cannot evade Section 230 "simply by changing the name of the theory" and repackaging the basic obligations she seeks to impose upon Discord under the rubric of fraudulent concealment or failure to warn. *Barnes*, 570 F.3d at 1102–03. "No matter how artfully" Plaintiff "seek[s] to plead [her] claims," these claims remain "directed toward" Discord "in its publishing, editorial, and/or screening capacities." *MySpace*, 528 F.3d at 419–20 (rejecting similar tactic).

The fraudulent concealment claim, for example, would require Discord to inform users about the risks of "grooming" or "sexual abuse" on the app, (Compl. ¶ 226), or in other words, the risk that other users could engage in those actions by sending minors messages. The negligent failure-to-warn claim would likewise require Discord to provide an "adequate warning" of the risks to teens, (*id.* ¶¶ 260–79)—i.e., the risks that they will encounter and interact with predators. The strict liability failure to warn claim, too, would require Discord to warn of similar risks. (*Id.* ¶ 361.) Because these warnings are "only . . . necessary because of [Discord's] allegedly inadequate policing of third-party content," they "arise[] from the company's transmission of harmful content" and cannot be required under Section 230. *In re Facebook, Inc.*, 625 S.W.3d at 94 (dismissing failure-to-warn product liability theory for this reason); *see also Grindr Inc.*, 128 F.4th at 1154 (Section 230 barred claim that Grindr had duty to warn users about general risks of using app); *Est.*

11

of *Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1180–81 (9th Cir. 2024) (Section 230 barred similar failure-to-warn claim for same reason); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 & 592 n.8 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586, 591 (2d Cir. 2019) (Section 230 barred failure-to-warn claim that would have required Grindr to post a warning).

Plaintiff also cannot escape Section 230 by purporting to target Discord's own aspirational statements about its moderation policy, where those statements do not amount to a promise. The Ninth Circuit rejected a similar gambit in *Grindr Inc.*, holding that Grindr's statement that it was "designed to create a safe and secure environment for its users" was "not a specific promise, but a description of its moderation policy, and thus protected from liability under § 230." 128 F. 4th at 1154. Here, too, Plaintiff points only to Discord's description of its moderation efforts, such as statements that Discord "take[s] steps to keep children safe on [its] app," (Compl. ¶ 238(g)), or "has a zero-tolerance policy for anyone who endangers or sexualizes children," (*id.* ¶ 146). These are not "specific promise[s]," *Grindr Inc.*, 128 F. 4th at 1154, but subjective statements about how Discord endeavors to moderate content. Plaintiff's claim effectively seeks to hold Discord liable for failing to moderate content in the way Plaintiff *thinks* these statements require Discord to moderate content, and thus treat Discord as a publisher by attempting to commandeer the way it publishes and screens content. *See Doe v. MySpace*, 528 F.3d at 419.

\*      \*      \*

Because they fault Discord, in one way or another, for failing to screen for and stop Jane Doe from exchanging explicit and unlawful messages with other users—and because the only way Discord could *avoid* liability under these theories is to have more perfectly

12

moderated user-generated content on its app—all of Plaintiff's claims treat Discord as the publisher of those messages.

### c. The allegedly harmful content originated with third parties, not Discord.

The third element of Section 230 immunity is also satisfied because Discord is not the provider of the messages that Plaintiff claims Discord is liable for failing to monitor and block. *See Doe v. MySpace*, 528 F.3d at 520. Providing the "tools" Jane Doe used to exchange these messages and "carry out what may be unlawful or illicit" communications does not transform Discord into such a content provider. *Roommates.com*, 521 F.3d at 1169 (providing communication features "does not amount to 'development' for purposes of the immunity exception"). Thus, in *Grindr Inc.*, the Ninth Circuit held that a dating app's communications "features and functions" that "facilitate[d] the communication and content of others" were "not content in and of themselves" for which Grindr could be liable as a content provider. 128 F.4th at 1152–53 (quoting *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019)).

So too here. There is no claim that Discord "required users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts." *Dyroff*, 934 F.3d at 1099. Plaintiff's claims instead seek to hold Discord liable for *facilitating*—and failing to monitor for, screen, or block— the messages Jane Doe and her assailants exchanged. (*See, e.g.*, Compl. ¶¶ 250, 260–79, 294, 303–21, 329, 361.) That is precisely the sort of liability Section 230 exists to prevent.

13

**B.    THE FIRST AMENDMENT BARS PLAINTIFF'S NON-FRAUD CLAIMS**

The First Amendment prohibits holding a forum for speech liable for the content it publishes without proof that the forum at least had "knowledge . . . of the contents" of the speech in question. *Smith*, 361 U.S. at 149. Because Plaintiff's negligence and product liability claims seek to impose liability based on what Discord "should have known" about the speech it distributed "regardless of whether" it actually knew, they violate this rule and are independently barred.

*Smith* held invalid a law making booksellers strictly liable for selling "obscene" books because it would have resulted in self-censorship. 361 U.S. at 153–54. The problem was "[t]he bookseller's limitation in the amount of reading material with which he could familiarize himself[."] *Id.* If the bookseller could be liable merely for stocking offensive books, the Court reasoned, the risk of liability "would tend to restrict the public's access to forms of the printed word" and "have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it." *Id.* at 151, 153–54; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73–74, 78 (1994) (*Smith* required construing statute to punish only knowing distribution of illicit content).

Under *Smith*, a distributor may "not be punished if he did not have some 'knowledge of the contents' of the allegedly" unlawful material. *United States v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 858 F.2d 534, 539 (9th Cir. 1988) (citation omitted); *see also Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611 (6th Cir. 2005) (any law that "chills the exercise of First Amendment rights must contain a knowledge element") (quoting *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992)).

14

Thus, in *Lewis v. Time Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983), the plaintiff failed to state a claim against distributors of Time magazine because "[n]o specific facts" were "alleged to show that the distributor defendants . . . had knowledge of the defamatory nature" of the speech published. *Lewis*, 83 F.R.D. at 464–65. "[T]here can be no liability" against a distributor of third-party speech consistent with "[t]he high standards required by the First Amendment," the court found and the Ninth Circuit affirmed, absent scienter and "specific factual allegations concerning actual knowledge[.]" *Id.* at 463, 465.

The First Amendment bars Plaintiff's claims. Plaintiff does not allege that Discord knew the contents of Jane Doe's communications with her assailants or that Discord knew that those specific assailants were communicating through Discord to commit crimes. Rather, Plaintiff claims Discord generally knew *some* users had previously used the service to arrange illegal activities. In such circumstances, permitting Plaintiff to impose liability on a publisher like Discord "would have an undoubted chilling effect on speech." *U.S. Dist. Ct. for Cent. Dist. of Cal.,* 858 F.2d at 539 (citation omitted); *see also Ripplinger v. Collins*, 868 F.2d 1043, 1056 (9th Cir. 1989) (provision permitting liability against distributors who "should know" speech contains obscenity "unduly chills" speech). The negligence and product-liability claims are thus barred for this reason as well.

## C.    PLAINTIFF FAILS TO ADEQUATELY PLEAD EACH OF HER CLAIMS.

Even setting aside Section 230 and the First Amendment, Plaintiff fails to state a claim under Rule 12(b)(6) and fails to plead fraud with particularity under Rule 9(b). The Court should dismiss the claims for these independent reasons.

15

1.    **Plaintiff's product liability and negligence claims (Claims 2–7) fail because Plaintiff has failed to adequately allege causation.**

Plaintiff's product liability and negligence claims require her to adequately plead causation. *Gerber v. Hoffmann-La Roche Inc.*, 392 F. Supp. 2d 907, 913 (S.D. Tex. 2005) (product liability); *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (negligence). Plaintiff has failed to do so.

"The two elements of proximate cause are cause in fact (or substantial factor) and foreseeability. . . . Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 222–23 (Tex. 2010) (internal quotations and citations omitted); *see also Gerber*, 392 F. Supp. 2d at 914 (product liability requires a "producing cause," which is "an efficient, exciting, contributing cause which, in a natural sequence, produced the injuries complained of").

As to online platforms, it is insufficient that third parties could foreseeably misuse a platform. Such platforms, which host an abundance of content, "do not proximately cause everything that an individual may do after viewing this endless content." *Crosby v. Twitter, Inc.*, 921 F.3d 617, 625 & n.4 (6th Cir. 2019) (collecting cases). "This is especially true where independent criminal acts, like [the acts of the predators in this case], are involved." *Id.* at 625; *see also, e.g.*, *A.B. v. Salesforce.com, Inc.*, 2021 WL 3616097, at *5 (S.D. Tex. Mar. 22, 2021) ("*A.B. II*") (dismissing tort claims against Salesforce for providing services to Backpage where plaintiff failed to allege Salesforce played a role in sex trafficking itself or designing or sanitizing ads on site). Here, Plaintiff's causal theory has too many links

and is severed by intervening causes, including that the adults in question first contacted Plaintiff on a different platform, and that they committed a crime.

### 2. Plaintiff's product liability claims (Claims 6–7) fail because Discord is not a product and because the dangers of its use are obvious.

Product liability law applies only to tangible goods. *See Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 239 (Tex. App. 1993), *writ denied* (Oct. 6, 1993) (intangible "ideas, thoughts, words, and information . . . are not products") (citing *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991)); *Herceg v. Hustler Mag., Inc.*, 565 F. Supp. 802, 803 (S.D. Tex. 1983) ("The Court is aware of no court which has held that the content of a magazine or other publication is a product within the meaning of § 402A of the Second Restatement of Torts."). The Third Restatement defines a "product" as "tangible personal property distributed commercially for use or consumption."[3] Restatement (Third) of Torts: Prod. Liab. § 19(a) (1998). "Courts are unanimous in refusing to categorize commercially-provided services as products[.]" *Id.*, § 19, cmt. f. Where something is a product is "for the court to determine as a matter of law." *Id.*, § 19, cmt. a.

The Court should dismiss Plaintiff's product liability claims because Discord is an intangible service—not a tangible product. *See, e.g., Ziencik v. Snap Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (online messaging platform Snapchat "is more like a service than a product, and services are not subject to the laws of strict products liability"); *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar.

---

[3] The Second Restatement likewise identified only tangible items as products. *See Rodgers v. Christie*, 795 F. App'x 878, 879 n.3 (3d Cir. 2020) ("[W]hether we look to the Second or Third Restatement makes little difference here.").

10, 2023) (dismissing product liability claims because "as a social media platform that connects its users, Facebook is more akin to a service than a product"); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (holding that "Airbnb is a platform that connects users; it is more akin to a service than to a product" and dismissing product liability claims).

**3.    Plaintiff's negligence claims fail because Plaintiff cannot allege Discord owed her a duty (Claims 2–5).**

Plaintiff's negligence claims fail for the additional reason that Plaintiff does not adequately plead that Discord owed her a duty. *D. Houston, Inc.*, 92 S.W.3d at 454 (duty is an element of negligence under Texas law).

Plaintiff's theory amounts to a requirement that communications platforms like Discord stop and detect *all* instances of crimes perpetrated by individuals abusing its platform. The U.S. Supreme Court effectively rejected such a duty under federal common law in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), where it ruled that "communication-providing services" could not be required "to terminate customers after discovering that the customers were using the service for illicit ends." *Id.* at 501.  The Ninth Circuit rejected such a duty even more squarely *Dyroff*, 934 F.3d at 1100–01, holding California law recognized no duty obligating a provider to prevent a user from purchasing a lethal dose of heroin from a dealer he met in a group that the service had recommended.

Federal courts applying Texas law have reached the same conclusion. Thus, in *Ethridge v. Samsung SDI Co.*, 604 F. Supp. 3d 556 (S.D. Tex. 2022), this Court dismissed a claim alleging Amazon failed to warn customers of defects in products on its website

18

because it "fail[ed] for want of a duty of care." *Id.* at 561.  Similarly, in *A.B.*, the court held

that a provider "has no duty to . . . prevent [users] from engaging in criminal acts," and

thus Salesforce owed no duty to victims trafficked through the Backpage website just

because it provided Backpage services, even though Salesforce allegedly knew Backpage

was misusing its platform. *A.B. II*, 2021 WL 3616097, at *4-5; *see also, e.g.*, *see Doe v.

MySpace*, 474 F. Supp. 2d ,843 852 (W.D. Tex. 2007) ("if anyone had a duty to protect

[plaintiff], it was her parents, not MySpace"). Predators will use whatever tools are

available to them, but this does not make the companies that provide those tools liable for

their misuse. Even though Discord tries to stop abuse of its services, it is not legally

responsible for every user's harmful act.

Try as she might, Plaintiff cannot allege the type of special relationship that would

otherwise give rise to such a duty. "As a general rule, there is no legal duty in Texas to

control the actions of third persons absent a special relationship, such as master/servant or

parent/child." *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995).[4]

Discord's relationship to Plaintiff was nothing more than a provider of communications

tools. That does not create a "special relationship" sufficient to impose a duty. *Ethridge*,

604 F. Supp. 3d at 560 (allegations that Amazon has "control" over what sellers it permits

on its website were insufficient); *see also, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354,

---

[4] Texas courts have recognized that "[s]pecial relationships include those existing between employer and employee, parent and child, and independent contractor and contractee." *Bauer v. Gulshan Enters., Inc.*, 617 S.W.3d 1, 21 (Tex. App. 2020); *Van Horn v. Chambers*, 970 S.W.2d 542, 546 (Tex. 1998).

1359 (D.C. Cir. 2014) (Facebook did not have a special relationship sufficient to create a duty with user). Plaintiff's allegations that Discord was "far more to Plaintiff than a business" or that Discord has "superior control over [its] app environments and the ability to protect [its] users" do not change this conclusion. (Compl. ¶ 238.) "No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1100–01.

### 4. Plaintiff's fraudulent concealment claim fails (Claim 1).

Finally, Plaintiff fails to state a claim for fraudulent concealment. Such claims require showing (1) the defendant deliberately failed to disclose material facts to the plaintiff that the defendant had a duty to disclose, (2) the defendant knew that the plaintiff was ignorant of the facts and that the plaintiff did not have an equal opportunity to discover them, (3) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, and (4) the plaintiff relied on the nondisclosure and suffered injury as a result of that reliance. *Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 419 (Tex. App. 2021), *aff'd sub nom. McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907 (Tex. 2023).

Plaintiff fails to state a claim for fraudulent concealment because she does not allege she relied on any information Discord allegedly concealed. Plaintiff alleges her mother helped her create a Roblox account in 2019 and that "[a]s time progressed, Plaintiff's online activities expanded to Discord[.]" (Compl. ¶¶ 206–09.) Plaintiff does not state when she created her Discord account, when she came into contact with her abusers, or when her mother became aware of her Discord use. These facts, as pled, cannot support a claim that

20

any alleged concealment of material information "caused" any detrimental reliance. *See Tryon Hills Dev., LLC v. Lexington Ins. Co.*, 2011 WL 13234827, at *2 (N.D. Tex. Mar. 16, 2011) (dismissing fraud claim absent reliance); *Festor v. Wolf*, 2009 WL 10669519, at *5 n.7 (W.D. Tex. Aug. 24, 2009) (holding where plaintiffs "offer no evidence or allegation that they relied on any representation," such representations "do not give rise to the fraud cause of action").

Dismissal is especially warranted here because Plaintiff's claim is subject to and does not satisfy Rule 9(b). That rule requires plaintiffs to plead the circumstances that give rise to fraud claims with "particularity." Fed. R. Civ. P. 9(b); *see Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 214-215 (5th Cir. 2025). Plaintiff's fraud claim does not meet this standard. Plaintiff targets purported "safety risks" she alleges Discord intentionally concealed.  (Compl. ¶¶ 221–23); s*ee Meyers v. Textron Fin. Corp.*, 2011 WL 4590796, at *2 (N.D. Tex. Oct. 4, 2011) (holding "the bare allegation that a corporation made a misrepresentation is not sufficient" and dismissing with prejudice fraudulent concealment claim for failure "to provide the specificity necessary to state a claim"). Indeed, Plaintiff cites evidence in the Complaint that directly controverts her claim that Discord is concealing material information related to "safety risks": A quick review of Discord's transparency reports, which Plaintiff cites in her Complaint, make clear that bad actors *do* misuse Discord, in violation of its Terms. (Exs. A–C.)

## CONCLUSION

Discord respectfully asks the Court to dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

By:  _/s/ J. Alexander Lawrence_

**MORRISON & FOERSTER LLP**
J. Alexander Lawrence, Attorney in
Charge (*Pro Hac Vice*)
250 West 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
ALawrence@mofo.com

Brian C. Nash
State Bar No. 24051103
701 Brazos Street, Suite 1100
Austin, TX 78701
Tel: (737) 309-0700
BNash@mofo.com

Justin Kareem Rezkalla
(*Pro Hac Vice*)
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
JRezkalla@mofo.com

**ATTORNEYS FOR DEFENDANT
DISCORD INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2025, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.


*/s/ J. Alexander Lawrence*