**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

|  |  |
|---|---|
| MARY DOE, as next friend of minor plaintiff, JANE DOE,<br><br>        Plaintiff,<br>   v.<br><br>ROBLOX CORPORATION and DISCORD INC.,<br>       Defendants. | CIVIL ACTION NO. 3:25-cv-00128 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT ROBLOX CORPORATION'S**
**MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

STANDARD OF REVIEW ........................................................................................... 4

ARGUMENT ................................................................................................................. 5

   I.   Section 230 Does Not Preempt Any of Jane's Claims ............................................. 5

   II.   The First Amendment Does Not Bar Jane's Claims................................................. 17

   III.   Roblox Raises No Viable Basis for Dismissing Jane's Claims on the Merits.... 18

      A.   Jane Has Alleged Plausible Negligence Claims ................................................. 18

        1.   Jane Has Alleged that Roblox Owed Her Multiple Duties ............................. 18

        2.   Jane Has Alleged Proximate Cause................................................................. 23

      B.   Roblox Is a Product ............................................................................................ 26

      C.   Roblox Fails to Show that Jane's Fraud Claim Should Be Dismissed ............... 29

CONCLUSION ............................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653 (Tex. 2023) ...........................23

*A.B. v. Salesforce, Inc.*, 123 F.4th 788 (5th Cir. 2024) ...............................passim

*Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588 (Tex. 1986) ............................22

*Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024) ...............................17

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ......................... 6, 7, 8, 11

*Barnes*, 570 F.3d at 1101 .....................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................4

*Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213 (Tex. 2019). 29

*Buchanan v. Rose*, 159 S.W.2d 109 (Tex. 1942) ............................................18

*Colonial Sav. Assoc. v. Taylor*, 544 S.W.2d 116 (Tex. 1976) ...........................23

*Colvin v. Roblox Corp.*, 725 F. Supp. 3d 1018 (N.D. Cal. 2024) ................ 19, 20

*Colvin v. Roblox Corp.*, No. 23-cv-04146, 2024 U.S. Dist. LEXIS 169513 (N.D. Cal.
    Sept. 19, 2024) ...............................................................................20

*Debut Sols. LLC v. Axion Structural Innovations, LLC*, No. 21-cv-56, 2021 U.S. Dist.
    LEXIS 268851 (S.D. Tex. Dec. 23, 2021) ...................................................30

*Doe ex rel. Roe v. Snap, Inc.*, No. CV H-22-00590, 2022 WL 2528615 (S.D. Tex. July 7,
    2022) .............................................................................................16

*Doe No. 14 v. Internet Brands*, No. 12-cv-3626, 2016 U.S. Dist. LEXIS 192144 (C.D.
    Cal. Nov. 14, 2016) ...........................................................................22

*Doe through Roe v. Snap, Inc.*, 88 F.4th 1069 (5th Cir. 2023) ...........................7

*Doe v. Boys Club of Greater Dallas*, 907 S.W.2d 472 (Tex. 1995)....................25

*Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025) ...............................................16

*Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) ....................5, 12, 15

*Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843 (W.D. Tex. 2007) .........................21

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008)........................................14

*El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex. 1987)....................................19

*Est. of Bride by & through Bride v. YOLO Techs., Inc.*, 112 F.4th 1168 (9th Cir. 2024) ... 8,
    11

*Ethridge v. Samsung SDI Co.*, 604 F. Supp. 3d 556 (S.D. Tex. 2022) .............22

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ................................................................................................... 7

*Ford Motor Co. v. Dallas Power & Light Co.*, 499 F.2d 400 (5th Cir. 1974) .................. 21

*Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263 (5th Cir.) ............................................. 5

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990) ........................... 20

*Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874 (Tex. App. Ct. 2002) ........................................ 26

*Hayes v. United States*, 899 F.2d 438 (5th Cir. 1990) ..................................................... 18

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019) .................. 9

*Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784 (Tex. 1988) ..................... 26

*Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103 (Tex. App. Ct. 2000) .................... 26

*Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex. 1999) ...................................... 28

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849 (N.D. Cal. 2024) .................................................................................................. 12

*In re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809 (N.D. Cal. 2023) ........................................................................... 12, 13, 27, 28

*Inclusive Cmtys. Project v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019) .................. 30

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ................................................ 13, 15

*Long v. Williams*, No. 09-cv-3323, 2010 U.S. Dist. LEXIS 163828 (S.D. Tex. July 29, 2010) ..................................................................................................................... 20

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13 (2020) ................. 7

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) .................................. 17

*McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013) .................................... 29

*Meador v. Apple*, 911 F.3d 260, 263 (5th Cir. 2018) ...................................................... 25

*Millhouse v. Wiesenthal*, 775 S.W.2d 626 (Tex. 1989) ................................................... 23

*Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452 (S.D. Tex. 2021) ..................................... 23

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ............................................................. 17

*Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983) ................................................. 18

*Richardson v. Axion Logistics, LLC*, 780 F.3d 304 (5th Cir. 2015) .................................. 5

*Riggs v. Apple*, 2017 WL 4018064 (Cal. App. Ct. 2017) ................................................. 26

*Rodriguez-Escobar v. Goss*, 392 S.W.3d 109 (Tex. 2013) .............................................. 25

*San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312 (Tex. App. Ct. 2000) .. 22

*Social Media Cases*, JCCP No. 5255, 2023 Cal. Super. LEXIS 76992 (Cal. App. Ct. 2023) ....................................................................................................................... 21

*Stratton Oakmont, Inc. v. Prodigy Services Co.*, No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ............................................................................................... 5

*Torrington v. Stutzman*, 46 S.W.3d 829 (Tex. 2000) ............................................... 23

*Travis v. Mesquite*, 830 S.W.2d 94 (Tex. 1992) ...................................................... 28

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ....................................................... 26

*Werner Enters., Inc. v. Blake*, No. 23-0493, 2025 Tex. LEXIS 585 (Tex. 2025) ........ 24, 25

## Statutes

47 U.S.C. § 230 ..................................................................................................... 6, 8

## Other Authorities

1 Rodney A. Smolla, Law of Defamation § 4:86 (2d ed.) .......................................... 7

Adam Candeub, *Reading Section 230 as Written*, 1 J. Free Speech L. 139, 144–46 (2021) ...................................................................................................................... 7

Danielle Keats Citron & Benjamin Wittes, *The Internet Will Not Break: Denying Bad Samaritans § 230 Immunity*, 86 Fordham L. Rev. 401 (2017) ................................. 5, 7

Restatement (Second) of Torts § 550 (1977) ........................................................... 11

Restatement (Third) of Torts § 19 .......................................................................... 27

Restatement (Third) of Torts: Phys. & Emot. Harm § 18 (2010) ............................. 12

## Rules

Fed. R. Civ. P. 201 ................................................................................................. 30

Fed. R. Civ. P. 8 ...................................................................................................... 4

## INTRODUCTION

Minor Plaintiff Jane Doe ("Jane") was groomed and raped by a predator whose criminal acts were facilitated and enabled by Defendant Roblox Corporation ("Roblox")'s dangerous marketing, operation, and design of its eponymous online gaming application ("app"), Roblox. Sadly, this case is no outlier. Over the years, thousands of children have been subjected to sexual grooming, exploitation, and assault made possible by the Roblox app—which Roblox aggressively, and deceptively, markets as safe for children.

Jane has bravely come forward to hold Roblox accountable for its conduct. Roblox's motion to dismiss Jane's case should be denied.

*First*, Section 230 does not preempt any of Jane's claims. Section 230 has been construed to bar claims that treat internet platforms like traditional publishers, *i.e.*, that seek to fault platforms for failing to responsibly monitor third-party content. None of Jane's claims would require Roblox to touch a piece of third-party content. As far as those claims are concerned, Roblox may keep publishing whatever it wants. Like any other business, it just cannot lie, fail to warn, or expose users to unreasonable danger. Roblox's failure to adhere to those basic duties, not any publisher duties, is what subjects it to liability here.

*Second*, for similar (and additional) reasons, the First Amendment does not bar Jane's claims. Jane's private suit to recover personal damages from a tortfeasor is not state action in restraint of speech.

*Third*, Jane's claims are all plausible on the merits. For Jane's negligence-based claims (Counts 2-5), she alleges detailed facts establishing that Roblox owed her multiple duties and that its conduct proximately caused her injuries. Her product-liability claims

(Counts 6-7) are viable because Roblox is a product, not a service. And she has adequately pleaded a fraudulent-concealment claim (Count 1) based on Roblox's failure to disclose material facts about the ineffectiveness of its parental controls and safety measures.

## BACKGROUND

Roblox is an online gaming app that hosts more than 40 million games or "experiences." Compl. ¶ 13. Roblox is an interactive experience that encourages users to communicate with each other through messages and voice chats. *Id.* ¶ 15.

Roblox was created for children. *Id.* ¶ 16. The self-described "#1 gaming site for kids and teens," Roblox has built a user base of over 68.5 million daily users, most of whom are under 17 years of age and many of whom are younger than 9. *Id.* ¶¶ 16-18.

Roblox is easily accessible to children and adults alike. *Id.* ¶¶ 14, 20. To create an account, a user need only provide a birthdate, username, and password. *Id.* ¶ 20. Roblox does not require users to verify their age or identity upon sign-up, so they can easily misrepresent that they are younger or older than their actual age. *Id*.

Roblox has gone to extraordinary lengths to market its app as safe for children. *See id.* ¶¶ 28-46. For years, Roblox has portrayed its app as "family friendly" and safe, claiming that "[s]afety is in our DNA." *Id.* ¶¶ 31, 33. It has also extensively touted the effectiveness of its parental controls and safety measures. *See id.* ¶¶ 29, 32, 41.

Nothing could be further from the truth. Roblox attracts countless child predators drawn to the app because it provides such easy access to children. *See id.* ¶¶ 64-66. The results have been devastating. For years, Roblox has enabled predators to identify, target, groom, and exploit innocent children. *Id.* ¶ 72. Many of these child victims have been

2

raped, assaulted, kidnapped, and coerced into sending sexually explicit images of themselves. *See id.* ¶¶ 73-78.

The dangers pervading Roblox are the direct result of actions taken by the company in designing, operating, and managing the app. *See id.* ¶¶ 105-28. Like most tech companies, Roblox has pursued a strategy of growth at any cost. *See id.* ¶¶ 86-104. To that end, Roblox deliberately designed and operated its app in ways that prioritized growing the number of users of its app over the safety of children. *See id.* ¶¶ 87-95. As one former Roblox employee explained, "You have to make a decision, right? You can keep players safe, but then it would be less of them on the platform. Or you just let them do what they want. And then the numbers all look good and investors will be happy." *Id.* ¶ 90.

Roblox, for example, implemented ineffective parental controls that it knew created an illusion of safety for parents. *See id.* ¶¶ 106, 250(c). It allowed users to create accounts without any effort to confirm age or identity, requiring only an (unverified) birthdate, username, and password to sign up. *See id.* ¶¶ 20, 113-14, 119-20. And Roblox maintained these dangerous features despite clear notice—from years of public reports—that they created a significant risk of harm to minor users. *Id.* ¶¶ 72-78, 250(c). Roblox also rejected common-sense safety measures proposed by its own employees. *Id.* ¶ 89.

Children have paid the price for Roblox's explosive growth. Jane is one of them. In 2019, Jane began playing on Roblox at age 10. *Id.* ¶ 206. Her mother set parental controls on the app and thought it was then safe for Jane to use. *Id.* ¶ 207. She was wrong. On Roblox, Jane was regularly contacted by dangerous predators who demanded nude photographs of her. *Id.* ¶ 208. Then, in 2024, she was once again targeted in a Roblox game

by a predator who lured her onto Defendant Discord Inc.'s app. *Id.* ¶¶ 211-12. Using Roblox and Discord to capture Jane's trust, the predator then coerced her into sending sexually explicit images of herself. *Id.* ¶¶ 211-13. Soon thereafter, when Jane was 15 years old, the predator traveled to her home, raped her, and recorded the incident on his phone. *See id.* ¶¶ 206, 213. After Jane's parents learned about the abuse, a criminal investigation ensued, and an arrest warrant was issued for the predator. *Id.* ¶ 214.

Jane's life has been devastated. She has suffered significant emotional and psychological injuries, her grades have plunged, and she is unwilling to engage with her peers. *Id.* ¶ 216. She has required psychological intervention, and she continues to grapple with anxiety, moments of disassociation, and excessive doubts about her future. *Id.* ¶ 217.

On April 30, 2025, Jane filed this lawsuit seeking to hold Roblox and Discord liable for causing the horrific abuse that she suffered as a result of their conduct. She has asserted claims of (1) fraudulent concealment, (2) negligence – general, (3) negligence – failure to warn, (4) negligence – unreasonable design, (5) negligent undertaking, (6) strict liability – design defect, and (7) strict liability – failure to warn. Compl. ¶¶ 218-369.

Roblox has moved to dismiss Jane's case. That motion should be denied entirely.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, the Court must "accept all well-pleaded facts as true and

view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 304 (5th Cir. 2015) (citation omitted).

## ARGUMENT

## I.    Section 230 Does Not Preempt Any of Jane's Claims

Section 230 protects operators of internet platforms like Roblox from claims based on a specific theory of liability—namely, from liability as the publisher of other people's content. But Congress expressly preserved all claims that are "consistent with" this protection, *i.e.*, claims based on any other theory of liability. 47 U.S.C. § 230(e)(3). Jane's claims are all based on other theories of liability. Thus, all are consistent with Section 230's "narrow language and its purpose," and none are preempted. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016).[1]

Courts generally agree that, "[t]o understand what Congress was trying to do when it passed § 230, it is helpful to start with the case that prompted its adoption." Danielle Keats Citron & Benjamin Wittes, *The Internet Will Not Break: Denying Bad Samaritans § 230 Immunity*, 86 Fordham L. Rev. 401, 404–05 (2017); *see, e.g.*, *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 285 (5th Cir.), *aff'd*, 145 S. Ct. 2291 (2025). That case was *Stratton Oakmont, Inc. v. Prodigy Services Co.*, No. 31063/94, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), a New York decision that would have rendered internet platforms liable as publishers of all content that their users posted if the platforms chose to remove any

---

[1] The Fifth Circuit has described its constructions of Section 230 as "consistent with the precedent of our sister circuits." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 796 (5th Cir. 2024). This brief therefore cites other-circuit caselaw that aligns with this Circuit's caselaw.

harmful posts. Given the daily volume of internet content, platforms' only real option was to keep it all, the good and the bad. As part of the Communications Decency Act of 1996, 110 Stat. 133, Congress enacted Section 230—captioned "Protection for private blocking and screening of offensive material"—to "encourage" platforms to keep removing the bad. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009) (quotation marks omitted).

The provisions that matter are in Section 230(c), which, as courts often note, is similarly captioned "Protection for 'Good Samaritan' blocking and screening of offensive material." *See, e.g.*, *Paxton*, 145 S. Ct. at 2305 n.4 (noting several indicative captions). As relevant here, Section 230(c)(1) states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[2] Section 230(c)(2) states that "[n]o provider . . . of an interactive computer service shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." *Id*. § 230(c)(2)(A).

These twin provisions directly resolve the Catch-22 that *Stratton Oakmont* could have created. Section 230(c)(2) allows platforms to take down certain user posts, while Section 230(c)(1) shields platforms from liability for leaving up others. *See Malwarebytes,*

---

[2] Roblox is an "interactive computer service." 47 U.S.C. § 230(f)(2). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet," which can include even the "interactive computer service" (*e.g.* Roblox) itself. *Id*. § 230(f)(3).

*Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020) (statement of Thomas, J.). In this way, Section 230 was meant to foster a safe internet, not "a lawless no-man's-land." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016) (quotation marks omitted); *accord Paxton*, 145 S. Ct. at 2305 n.4 ("Congress thereby aimed to spur the development and use of filtering technology so that parents could prevent their children from accessing sexually explicit content online.").

Roblox undisputedly did not take down any of the harmful content at issue, as it could have done under Section 230(c)(2). The "immunity" Roblox asserts must therefore come from Section 230(c)(1), which does not "mention 'immunity' or any synonym." *Barnes*, 570 F.3d at 1100 (quotation marks omitted). Even so, some courts have construed this provision to protect platforms from liability simply for hosting third-party content. To whatever extent the provision provides this so-called immunity, however, it has two significant limitations, both of which foreclose all of Roblox's arguments.[3]

---

[3] Some decisions—especially those issued not long after Section 230 was enacted, before the internet was what it is—have extended Section 230 "far beyond anything that plausibly could have been intended by Congress." 1 Rodney A. Smolla, Law of Defamation § 4:86 (2d ed.); *accord Doe through Roe v. Snap, Inc.*, 88 F.4th 1069 (5th Cir. 2023) (Elrod, J., dissenting from denial of rehearing en banc) (agreeing). Section 230 has in turn become associated with the goal of "promot[ing] the free exchange of information and ideas over the Internet." *Barnes*, 570 F.3d at 1099 (quotation marks omitted). Congress did intend Section 230 to serve that goal—but by making the internet *more* safe, not less. Enabling platforms to remove harmful content by overruling *Stratton Oakmont* was Congress's "principal" if not "only purpose." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1163 n.12 (9th Cir. 2008) (en banc); *see also Paxton*, 145 S. Ct. at 2305 n.4; Adam Candeub, *Reading Section 230 as Written*, 1 J. Free Speech L. 139, 144–46 (2021); Citron & Wittes, *supra*, at 404–406. In any event, courts have given

*First*, Section 230(c)(1) can protect platforms only from liability *as* publishers of third-party content. Congress again flagged this limitation in the caption: "Treatment of publisher or speaker." 47 U.S.C. § 230(c)(1). This provision will therefore bar a claim only insofar as the plaintiff alleges that a platform breached a duty to act as a publisher would. Publishers "revie[w], edi[t], and decid[e] whether to publish or to withdraw . . . third-party content." *Barnes*, 570 F.3d at 1102. By approving what it publishes, a publisher may make itself liable for any injuries therefrom—defamation being the classic example (and the alleged injury in *Stratton Oakmont*). *See Est. of Bride by & through Bride v. YOLO Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024). Under Section 230(c)(1), plaintiffs may not claim that a platform *should* have exerted such control over any content that it merely hosts.

Yet platform operators do plenty more than host other people's content. They enter contracts, design products, and generally engage in normal corporate activities that give rise to normal corporate duties that have nothing to do with hosting third-party content. When applying Section 230 to a given case, then, courts consider the "'right' from which the duty springs" and what the duty would "requir[e] the defendant to do." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024). If the duty "springs from something separate from the defendant's status as a publisher"—*e.g.*, from "an agreement" or the defendant's "distinct capacity as a product designer"—Section 230 "does not apply." *Id*.

---

greater heed over time to Section 230's text and context, coalescing around the limitations discussed herein. To the extent Roblox relies on cases that exceed these statutory limitations, the statute controls.

Section 230 likewise does not apply if the duty a plaintiff invokes does not "oblig[e] the defendant to monitor third-party content." *Id*. "In making this determination," the Fifth Circuit has said, "a court can hypothesize what would happen if the allegations were true and the defendant were found liable." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 795 (5th Cir. 2024). If "the duty would *necessarily require* an internet company to monitor, alter, or remove third-party content," then the claim treats the platform as a publisher, and Section 230 applies. *Id*. (emphasis added; cleaned up). If not, then not. Moderating third-party content must therefore "be more than one option" the defendant has to satisfy the duty; "it must be the only option." *YOLO*, 112 F.4th at 1177 n.3.

Second, though Section 230 bars liability for simply hosting third-party content, "[i]t is not enough that third-party content is involved." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019). Platforms exist to host content. "Publishing activity is," accordingly, "a but-for cause of just about everything [platforms are] involved in." *Internet Brands*, 824 F.3d at 853. Applying Section 230 wherever third-party content is involved—*i.e.*, wherever third-party content could be called a but-for cause of a plaintiff's injury—would therefore "eviscerate" the statute. *HomeAway.com*, 918 F.3d at 682. A "mechanical, but-for" test might align "with a statute that read [that no platform] 'shall be held liable for conduct involving third-party speech.' But that is not the statute Congress enacted." *Salesforce*, 123 F.4th at 794. Under the statute Congress did enact, platform operators may be sued under any "theory of liability" not premised on the claim that the operator should have kept a better eye on the platform. *Barnes*, 570 F.3d at 1101. That is true even if a plaintiff's injury stems from another platform user's words or actions.

And in this Circuit, that is true even if third-party content is purportedly the "*only link*" between the platform and the injury. *Salesforce*, 123 F.4th at 796 (emphasis added).

Together, these limitations require a "functional, claims-analysis approach," which courts apply claim-by-claim, allegation-by-allegation. *Id*. at 793. This approach enables courts to catch artful pleading while "extending section-230 immunity no further than the text requires." *Id.* Respecting statutory limits is not artful pleading. The Fifth Circuit recognized as much in *Salesforce*, which contains this Circuit's most recent "exegesis" of Section 230. *Id*. The plaintiffs there were trafficked for sex "through advertisements posted on Backpage," a now-defunct platform, and sued Backpage's software partner (Salesforce) for participating in a sex-trafficking venture in violation of 18 U.S.C. § 1595. *Id*. at 791. Obviously, their claims implicated third-party content (the Backpage ads). But just as "obvious[ly]," the duty they invoked—namely, "a statutory duty to not knowingly benefit from participation in a sex-trafficking venture"—did "not derive from Salesforce's status or conduct as a publisher . . . and would not require Salesforce to exercise publication or editorial functions to avoid liability." *Id*. at 797. It "simply require[d] that Salesforce not sell its tools and operational support to a company it knew (or should have known) was engaged in sex trafficking." *Id*. That is a far cry from "quintessential" publisher activity. *See id*. at 797–98. And thus, as Roblox fails to mention, Section 230 did not apply.

Under *Salesforce* and the widely shared principles it applies, Section 230 does not preempt any of Jane's claims.

**Fraudulent Concealment (Count 1)**. Jane's fraudulent-concealment claim arises from Roblox's duty to be truthful and not misleading in its own representations. As the

Ninth Circuit held in *Barnes*, platforms remain bound by their own promises, including promises to moderate third-party content. *See* 570 F.3d at 1107. And as the same court held in *YOLO*, representations are akin to promises. Thus, after the defendant had "represent[ed] to its users that it would unmark and ban abusive users"—an act of content moderation—Section 230 did not bar misrepresentation claims when the defendant's failure to moderate subjected minor plaintiffs to abuse over its app. 112 F.4th at 1179; *see also Salesforce*, 123 F.4th at 796–97 (relying on *Barnes* and *YOLO*). Simply put, "[p]romising . . . is not synonymous with the performance of the action promised." *Barnes*, 570 F.3d at 1107.

Here, Jane specifically alleges fraud by *omission*. But that makes no difference to Section 230. Where a defendant "intentionally prevents [a plaintiff] from acquiring material information," the defendant "is subject to the same liability . . . *as though he had stated the nonexistence of the matter*."    Restatement (Second) of Torts § 550 (1977) (emphasis added). In *YOLO*, the defendant mispresented that it would stop minor abuse; here, Roblox concealed that it does not stop that abuse (while otherwise touting the platform's purported safety). And neither case arises from a purported duty to moderate user content. To use Section 230 terms: does the duty alleged here spring from Roblox's status as a publisher? No. It springs from any corporate defendant's duty to tell the whole truth about its product. Is moderating third-party content the only way Roblox could satisfy that duty? No. Roblox could simply tell the whole truth. Section 230 thus does not apply.

***Failure To Warn (Negligence, Count 3; Strict Liability, Count 7)***.[4] Jane's failure-to-warn claims arise from Roblox's duty to tell users about the dangers it knows or should know are lurking in its product. This is another duty borne by defendants generally—from companies that run powerlines to drivers who fail to use a turn signal—not just publishers. *See, e.g.*, Restatement (Third) of Torts: Phys. & Emot. Harm § 18 (2010). Roblox bore this duty because of what it learned or should have learned "independently of its publishing activity," including through the public reports cited throughout the Complaint. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 885 (N.D. Cal. 2024) ("*In re Social Media*"); *see* Compl. ¶¶ 47–136 & nn.38–152. "[N]ot one court" has held "that Section 230 bars such failure-to-warn theories in general." *In re Social Media*, 753 F. Supp. 3d at 887. To the contrary, many such claims have been allowed to proceed, *see id*. at 887–88 (surveying), including claims based on the same failures alleged here, *see In re Social Media*, 702 F. Supp. 3d 809, 829 (N.D. Cal. 2023).

As the Ninth Circuit held in *Internet Brands*, enforcing a duty to warn "would not require [the defendant] to remove any user content or otherwise affect how it publishes or monitors such content." 824 F.3d at 851; *see also Salesforce*, 123 F.4th at 795 (relying on *Internet Brands*). Just so here. Does the duty alleged spring from Roblox's status as a

---

[4] Roblox groups the claims differently, addressing all Jane's negligence claims separately from her strict-liability claims and her fraud claim. Given that Section 230 turns on the substance of the duty asserted, it makes more sense for these purposes to address claims based on what they require (*e.g.*, truthfulness, adequate warnings, or safe design). *See, e.g.*, *In re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d 809, 829–35 (N.D. Cal. 2023) (addressing claims in this manner).

publisher? No. It springs from any defendant's duty to warn about known dangers. Could Roblox satisfy that duty only by moderating third-party content? No. Roblox could provide adequate warnings. So again, Section 230 does not apply.

***Unreasonable/Defective Design (Negligence, Count 4; Strict Liability, Count 6)***. Jane's design-defect claims arise from Roblox's duty as product designer. This duty "differs markedly from the duties of publishers": product designers must "refrain from designing a product that poses an unreasonable risk of injury"; publishers "generally have no similar duty." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021); *see also* Restatement (Third) of Torts: Prods. Liab. § 2(d)–(f) (explaining the theories underlying design-defect claims). Jane does not allege that Roblox's platform is defective because Roblox fails to police user content. The platform is defective because it lacks the features needed to protect minors from the harmful content Roblox allows—including, once again, the exact kinds of defects that Section 230 has already been found not to protect. *Compare* Compl. ¶¶ 294, 337 (discussing, among other things, Roblox's lack of "[e]ffective parental controls," "robust age and identity verification," and adequate "reporting protocols"), *with In re Social Media*, 702 F. Supp. 3d at 829 (holding that Section 230 does not bar design-defect claims based on those same deficiencies). Does the duty alleged here spring from Roblox's status as a publisher? No. It springs from any product designer's duty to design a reasonably safe product. Could Roblox satisfy that duty only by moderating third-party content? No. Roblox could provide effective parental controls, and every other necessary safety feature that the Complaint identifies, "without altering the content [its] users generate." *Lemmon*, 995 F.3d at 1092. So Section 230 does not apply here, either.

13

***General Negligence (Count 2); Negligent Undertaking (Count 5)***. The analysis is the same for Jane's other negligence claims. Her general-negligence claim incorporates the above-discussed duties. As with her fraudulent-concealment, failure-to-warn, and design-defect claims, Jane does not allege that Roblox was negligent because Roblox failed to censor any content she saw or conversation she had on the platform. Roblox was negligent because its "own" acts and omissions—including concealing material facts, failing to warn of known dangers, and designing an unsafe product—subjected Jane to an unreasonable risk of harm. Compl. ¶¶ 250–51. Similarly, Jane's negligent-undertaking claim arises from the duty that Roblox voluntarily assumed by purporting to render "parental control services and account safety services" to her mother. *Id*. ¶ 305. As discussed, those features are "necessary for the protection of minor users," *id*. ¶ 306, but, in this case, were woefully ineffective. For the reasons above, these claims neither arise from Roblox's status as a publisher nor seek specifically to fault Roblox for failing to act like a responsible publisher. Section 230 thus does not apply to any of Jane's claims.

In response, Roblox urges the Court to adopt a test that courts—including the Fifth Circuit—have uniformly rejected, suggesting that "Congress provided broad immunity" under Section 230 "for all claims stemming from their publication of information created by third parties." Mot. 8 (cleaned up). So stated, that is precisely the "mechanical, but-for" test that *Salesforce* rejected, just in different words. *Salesforce*, 123 F.4th at 794. Otherwise, Roblox's Section 230 arguments consist of misconstruing a few cases. These fare no better.

Contrary to Roblox's suggestion, *see* Mot. 11, the Fifth Circuit did not hold in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), that Section 230 would preempt all future

14

negligence claims against internet platforms. The Fifth Circuit itself has clarified *MySpace* in more recent opinions, rejecting "misguided reading[s] of *MySpace* that," like Roblox's, are "akin to a but-for analysis." *Salesforce*, 123 F.4th at 794. In *Paxton*, as here, the party invoking Section 230 "argued that *MySpace* stood for the proposition that [Section 230] provided broad immunity . . . to Web-based service providers for *all claims* stemming from their publication of information created by third parties." *Id.* (quoting *Paxton*, 95 F.4th at 286). To the contrary, the court explained that "the emphasis, properly placed, would read" that Section 230 "provide[s] broad immunity . . . to Web-based service providers for all claims stemming from their *publication of information created by third parties*." *Id.* (quoting *Paxton*, 95 F.4th at 286) (formatting altered). Accordingly, *MySpace* had construed Section 230 to bar "negligence liability *for* publishing communications," which necessarily, and impermissibly, would have imposed a duty not to publish that content. *Paxton*, 95 F.4th at 285 (discussing *MySpace*, 528 F.3d at 418–19).

As the Fifth Circuit later explained in *Salesforce*, that conventional construction of Section 230 was fully consistent with the "functional, claims-analysis approach" followed in other circuits, 123 F.4th at 793–94, where other negligence claims have been allowed to proceed, *see, e.g.*, *Lemmon*, 995 F.3d at 1092; *Internet Brands*, 824 F.3d at 851; *In re Social Media*, 702 F. Supp. 3d at 829–30, 834. Thus, *MySpace* does not change any of the analysis above. Unlike the *MySpace* plaintiffs, Jane does not seek to fault Roblox *for* publishing any communications. She asserts liability based on Roblox's own actions and omissions. Section 230 does not immunize those. Neither could (nor does) *MySpace*.

Roblox's remaining citations are similarly distinguishable. To the extent that any of those cases construe Section 230 to bar any type of claim that Jane brings, it was because the plaintiffs had explicitly invoked the type of duty that Section 230 forbids. For example, Roblox emphasizes *Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025), where the Ninth Circuit held that Section 230 barred a failure-to-warn claim. (Roblox gives notably shorter shrift to all the related claims that have proceeded against platforms in that circuit, notwithstanding their Section 230 arguments, as discussed above.) But in *Grindr*, the plaintiff asserted "a duty *to suppress* matches and communications between adults and children," and the defendant had no "independent knowledge" of alleged dangers. *Id*. at 1153–54 (emphasis added). Here, Jane does not claim any duty to suppress, and her Complaint alleges Roblox's extensive independent knowledge of the app's dangers.

Similarly, "the crux" of all the claims in *Snap* was that the platform was liable merely for "creat[ing] the opportunity for [a predator] to send illicit messages." *Doe ex rel. Roe v. Snap, Inc.*, No. CV H-22-00590, 2022 WL 2528615, at *14 (S.D. Tex. July 7, 2022). Although Jane's injury might be similar here, her theories of liability simply require Roblox to alert users to the risks of its platform and to provide the design features parents need to mitigate those risks—not to monitor any user content for itself.

Section 230 plays an important role. But that role does not include permitting Roblox to subject minors to sexual predators by preempting claims where, as here, no claim seeks to treat Roblox like a publisher. That would be an odd end for a statute meant to encourage "Good Samaritan" content moderation.

## II.    The First Amendment Does Not Bar Jane's Claims

Roblox's First Amendment argument requires far less space. None of Roblox's misconduct—*e.g.*, its fraudulent concealment, failure to warn, and design defects—can properly be called an exercise of protected "editorial judgment." And Roblox cites no case to the contrary. Even more fundamentally, however, the First Amendment prohibits only *the Government* from restraining speech. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019). Illustrating the point, Roblox's First Amendment argument is entirely based on a case, *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), that arose from state laws attempting to regulate platforms' editorial functions.

Jane is not the Government. Nor can her suit be somehow construed as "state action." Seeking recovery for personal injuries is not "a function traditionally exclusively reserved to the State." *Halleck*, 587 U.S. at 804 (quotation marks omitted). Thus, when the Third Circuit recently concluded that TikTok's algorithm constituted First Amendment speech under *Moody*, it did not then conclude that the First Amendment barred personal-injury claims from an accidental suicide allegedly caused by content that the algorithm had served up. *See Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024). The upshot was, instead, that Section 230 *did not bar those claims*, because they were based on first-party (not third-party) speech. *See id*. At most, therefore, Roblox's First Amendment argument only further undermines its Section 230 arguments.

**III.    Roblox Raises No Viable Basis for Dismissing Jane's Claims on the Merits**

    **A.    Jane Has Alleged Plausible Negligence Claims**

        **1.  Jane Has Alleged that Roblox Owed Her Multiple Duties**

Roblox (remarkably) contends that it owed no duty whatsoever to Jane—a minor user of an app it says it designed for children. In effect, Roblox likens itself to a "mere bystander who did not create the dangerous situation and is not required to become the good Samaritan and prevent injury to others." *Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942). Roblox ignores Jane's allegations, which detail the affirmative and deliberate actions the company took that created the foreseeable risk that Jane and other minors would be sexually exploited on its app. Roblox thus assumed several fundamental duties to Jane. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983) ("One who voluntarily enters an affirmative course of action affecting the interests of another is regarded as assuming a duty to act and must do so with reasonable care."). These include (1) the general duty to exercise reasonable care to avoid foreseeable injury to others (Count 2: Negligence – General); (2) the duty to warn of the known dangers of its app (Count 3:  Negligence – Failure to Warn); (3), the duty to exercise ordinary care in the design of its app (Count 4: Negligence – Unreasonable Design); and (4) the duty to exercise reasonable care in rendering parental control and account safety services (Count 5: Negligent Undertaking).

*Count 2: Negligence – General.* "Under Texas law, one has a duty to exercise reasonable care to avoid foreseeable injury to others." *Hayes v. United States*, 899 F.2d 438, 444 (5th Cir. 1990) (citation omitted). This bedrock duty requires "Roblox . . . to use reasonable care in its conduct, the creation and management of its platform, to avoid

creating an unreasonable risk of harm to others." *Colvin v. Roblox Corp.*, 725 F. Supp. 3d 1018, 1026 (N.D. Cal. 2024). So the duty that Roblox owed Jane here is "merely the application of the general duty to exercise reasonable care to avoid foreseeable injury to others." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

Jane alleges that Roblox's "own actions"—which were "independent of any actions taken by a third party"—created an unreasonable risk of harm to her and other minor users. Compl. ¶ 250; *see also id.* ¶ 237 (Roblox "owed Plaintiff a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app and not to create an unreasonable risk of harm from and in the use of its app"). For example, Roblox implemented ineffective parental controls that it knew created an illusion of safety for parents, allowed users to create accounts without any form of age or identity verification, and intentionally avoided requiring users to provide even their name, email address, or phone number when signing up. *See id.* ¶¶ 106, 113-14, 119-20. Roblox also facilitated the unsupervised or hidden use of its app "by adopting protocols that allow youth users to change their own safety settings or parental controls, and create multiple and private accounts." *Id.* ¶ 250(c); *see also id.* ¶ 106. And it maintained these dangerous features despite clear notice—from years of public reports—that they created a significant risk of harm to kids. *Id.* ¶¶ 72-78, 250(c). Roblox also rejected common-sense safety measures proposed by its employees and reduced its safety expenditures, choosing to elevate user growth over child safety. *Id.* ¶¶ 89-95.

Roblox does not mention its basic duty to avoid creating an unreasonable risk of harm to children like Jane, much less show it is inapt here. Nor could it. The "foremost and

dominant consideration" in a duty analysis is the "foreseeability of the risk." *Long v. Williams*, No. 09-cv-3323, 2010 U.S. Dist. LEXIS 163828, at *20 (S.D. Tex. July 29, 2010) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). Nothing was more foreseeable to Roblox than the risk of what happened to Jane as the result of the company's conduct in designing, marketing, and operating its app. Jane cites case after case, article after article, report after report involving children who were similarly exploited through Roblox. *See* Compl. ¶¶ 72-78. Given the immense harm that Roblox's conduct has caused Jane and thousands of other children, Roblox should bear the burden of operating its platform in a reasonable way. *Long*, 2010 U.S. Dist. LEXIS 163828, at 20 (foreseeability is "weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant"). Requiring Roblox to comply with this duty of care "would benefit the community at large" and would impose minimal burden because Roblox has "the technological and financial means to avoid" these risks of harm. Compl. ¶¶ 247-48.

Applying this basic duty of care to Roblox breaks no new ground. Judge Chhabria in the Northern District of California has twice held that Roblox owes this duty. *See Roblox*, 725 F. Supp. 3d at 1025-26; *Colvin v. Roblox Corp.*, No. 23-cv-04146, 2024 U.S. Dist. LEXIS 169513, at *5-11 (N.D. Cal. Sept. 19, 2024). Roblox, according to the court, owed the "general duty of reasonable care" to its minor users because its conduct (there, facilitating minor users' online gambling with off-app third-party online casinos) "*created* the risk of harm to the minor plaintiffs who otherwise would not have been exposed to the

virtual casinos." *Roblox*, 2024 U.S. Dist. LEXIS 169513, at *7 (emphasis in original).[5] The court also found that the risk of this harm was foreseeable given Roblox's awareness of the virtual casinos and that Roblox could and should bear the costs of its negligent conduct. *Id.* at *10-11. This case is no different.

*Doe v. MySpace, Inc.* is not to the contrary. There, the court rejected a claim on the ground that it sought to hold MySpace liable based simply on the company's provision of a service akin to that offered by a "phone company" or "delivery service" company. 474 F. Supp. 2d 843, 850-52 (W.D. Tex. 2007) (citation omitted). Here, Jane seeks to hold Roblox liable for its affirmative actions in designing, creating, and falsely representing a platform that increases the foreseeable risk of harm to Jane and other children. Roblox cannot disregard the duty of reasonable care that it assumed as a result of its actions.

***Negligence – Failure to Warn (Count 3).*** Roblox's actions in creating and operating its app also imposed a basic duty to warn of known dangers. Texas law recognizes "a duty to warn on the part of the person who created a dangerous situation"—even "without negligence on his part." *Ford Motor Co. v. Dallas Power & Light Co.*, 499 F.2d 400, 413 (5th Cir. 1974) (citing *Rose*, 159 S.W.2d at 110). Because Roblox's conduct in creating, designing, and operating its app "created the risk that child users of [its] app would be subject to grooming, sexual abuse, and sexual exploitation," Compl. ¶ 268, Roblox owed

---

[5] *See also Social Media Cases*, JCCP No. 5255, 2023 Cal. Super. LEXIS 76992, at *70 (Cal. App. Ct. 2023) (holding that operators of social media apps such as Snapchat and Instagram "had a duty not to harm the users of Defendants' platforms through the design and/or operation of those platforms" because "all persons are required to prevent others from being injured as the result of their conduct").

a duty to warn Jane and other minor users of these known risks, *see Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591 (Tex. 1986) (addressing a "negligent failure to warn claim" and holding that a designer, "who has intimate knowledge of a designed product," has "a duty to inform users of hazards associated with the use of its products"); *cf. Ford*, 499 F.2d at 413 (holding that a company that "created, maintained and operated [a] dam, the presence of which posed nearly all of the problems of proper conduct," owed a duty to warn the public about the risk of flooding from the dam).

The failure-to-warn cases relied on by Roblox simply illustrate the inapplicable principle that a person does not assume a duty to warn unless their actions create the risk of harm to the plaintiff. In *Doe No. 14 v. Internet Brands, Inc.*, the court rejected the plaintiff's negligent failure-to-warn claim, finding no duty because, unlike Jane, the plaintiff there did "not allege" that the online platform's "actions somehow *created* the risk faced by its members or made Jane Doe's position, by its actions, *worse*." No. 12-cv-3626, 2016 U.S. Dist. LEXIS 192144, at *9 (C.D. Cal. Nov. 14, 2016) (emphasis in original). And Roblox relies on *Ethridge v. Samsung SDI Co.*, 604 F. Supp. 3d 556 (S.D. Tex. 2022), for the proposition that there is no "general 'duty to warn of dangers' from third parties." Mot. 19. But the case cited by the *Ethridge* court for this statement makes clear that a party that "creates a dangerous situation" owes a duty to warn the public. *San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 319 (Tex. App. Ct. 2000).

***Negligence – Unreasonable Design (Count 4).*** As the designer of the Roblox app, Roblox owed Jane "a duty to exercise ordinary care in the design of [that app]." *Alm*, 717 S.W.2d at 590-91. Roblox cannot seriously dispute that it owed Jane this standard duty,

22

including because the only negligent-design case that Roblox cites, *see* Mot. 18 n.7, confirms as much, *see Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452, 461 (S.D. Tex. 2021) ("A manufacturer owes a duty to its customers under Texas law to design a product that doesn't involve an unreasonable risk of harm.").

*Negligent Undertaking (Count 5).* For Jane's negligent-undertaking claim, Roblox assumed a duty to Jane because it engaged in an "affirmative course of action" through which it rendered services that it knew or should have known were "necessary for the protection of [Jane]." *In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 660 (Tex. 2023) (citation omitted). Roblox "rendered parental control services and account safety services to" Jane's mother that it knew "were necessary for the protection of minor users." Compl. ¶¶ 305-06. By undertaking to provide such services, Roblox assumed a "duty to exercise reasonable care to perform this undertaking." *Colonial Sav. Assoc. v. Taylor*, 544 S.W.2d 116, 120 (Tex. 1976). Jane has thus sufficiently alleged a duty for her negligent-undertaking claim, and Roblox's factual disputes over whether it owed this duty, *see* Mot. 21-22, are to be decided by a jury. *See Torrington v. Stutzman*, 46 S.W.3d 829, 841 (Tex. 2000) (holding that the "factual predicates for an undertaking duty" are to be decided by a jury).

### 2. Jane Has Alleged Proximate Cause

Roblox urges the Court to hold, on a motion to dismiss, that its negligence was not the proximate cause of Jane's injuries. But "proximate cause is usually a question of fact," *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989), and Jane has alleged facts supporting proximate cause for each of her negligence-based claims.

Proximate cause has two elements: "(1) cause in fact, and (2) "foreseeability." *Werner Enters., Inc. v. Blake*, No. 23-0493, 2025 Tex. LEXIS 585, at *13 (Tex. 2025). Roblox claims that Jane's injuries were "not reasonably foreseeable," Mot. 23, but that argument collapses given the detailed allegations in the Complaint showing that the dangers that befell Jane were not only foreseeable but *known* to Roblox. *See* Compl. ¶¶ 72-78. As for cause in fact, that element has two components: "(1) but-for causation, and (2) substantial-factor causation." *Blake*, 2025 Tex. LEXIS 585, at *13 (quotation marks omitted). But-for causation is not at issue here because Roblox concedes that its negligence was part of the "causal chain" that led to Jane's injuries. Mot. 23; *see Blake*, 2025 Tex. LEXIS 585, at *3 (but-for causation is satisfied when "negligence is part of the causal chain of events that led to the injury"). That leaves whether Jane has adequately alleged that Roblox's negligence was a substantial factor in causing her injuries. She has.

At base, the substantial-factor requirement ensures that liability is imposed on a party that "is actually responsible for the harm." *Blake*, 2025 Tex. LEXIS 585, at *15. It involves a "practical" application of the "test of common experience, to human conduct" and serves to determine "whether a defendant's blameworthy act was sufficiently related to the resulting harm to warrant imposing liability for that harm on the defendant." *Id.*

Jane has alleged that Roblox's negligence was sufficiently related to the harm she suffered. Roblox created its app for children and extensively marketed the app as a safe and fun place for them to play. *See* Compl. ¶¶ 13-20, 28-46. But as Roblox well knew, the reality was far different as the result of its conduct in designing, operating, and managing the app. *See id.* ¶¶ 72-78, 106-07, 113-20, 250. Roblox included dangerous features in its

24

app that created a hunting ground for child predators and failed to warn of those dangers after the company was fully aware of them. *See id.* ¶¶ 250, 264-68, 271-73, 283-85, 293-96. Roblox also provided parental controls and safety services that it knew were ineffective but would lull parents into a false sense of safety. *See id.* ¶¶ 83, 305-06, 312-14. It also enabled predators to easily transition children from its app to Discord. *See id.* ¶¶ 108-10. This negligent conduct did not "merely create the condition which made the injury possible." *Blake*, 2025 Tex. LEXIS 585, at *3 (citation omitted). It was the driving force—or a "substantial factor"—that caused Jane's injuries. *See id.* ¶¶ 106, 255, 274, 298, 315.

Roblox claims the causal chain is "too attenuated." Mot. 23. Roblox points the finger at Discord or the predator as the proximate cause of Jane's injuries. *Id.* But Roblox cannot disclaim responsibility on this basis—"there can be more than one proximate cause of an injury." *Blake*, 2025 Tex. LEXIS 585, at *19.

Whether Roblox is ultimately right is for the jury to decide based on the evidence presented—a point underscored by Roblox's own cases. The court's reasoning in *Rodriguez-Escobar v. Goss* relied on a dearth of expert *trial* testimony to affirm a jury verdict finding no causation. 392 S.W.3d 109, 113 (Tex. 2013). Likewise, in *Doe v. Boys Club of Greater Dallas, Inc.*, the court found that no evidence at *trial* established that the club would have rejected a volunteer who assaulted a child had they run a background check and discovered his prior DWI convictions. 907 S.W.2d 472, 477–78 (Tex. 1995).

And *Meador v. Apple, Inc.* is inapposite. There, the court answered an exceptionally narrow question: whether "a driver's *neurobiological response* to a smartphone notification can be a cause in fact of a car crash." 911 F.3d 260, 263 (5th Cir. 2018) (emphasis added).

Jane's claims do not turn on an argument about predators' neurobiological responses to Roblox. And unlike in *Meador*, where no party alleged that Apple *encouraged* texting and driving, Roblox encourages children to use a platform that it knows attracts dangerous predators and continuously refuses to remedy defects or issue warnings because of financial incentive to grow its user base. *See* Compl. ¶¶ 86-95.[6]

### B.    Roblox Is a Product

Jane has alleged plausible product liability claims (Counts 6 and 7) because Roblox's app is a product, not a service. Roblox's arguments to the contrary are wrong.

The dividing line under Texas law is not—as Roblox asserts—tangibility. If that were true, then electricity could never be a product. Yet, at the point of consumption, "electricity is considered a product for strict liability purposes." *Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874, 878 (Tex. App. Ct. 2002) (citing *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988)). Texas courts have also recognized that software can be product. *See, e.g.*, *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 n.2 (Tex. App. Ct. 2000) (holding that defendant's software was a product because "it is a highly technical tool used to create a graphic representation from technical data"). That electricity and software can be products comports with the Third Restatement's definition of product that Roblox relies on. Mot. 25. Roblox quotes the first sentence of that

---

[6] Roblox's other cases are also distinguishable. The court in *Riggs v. Apple* also addressed whether Apple caused the death of a man struck by a driver who was texting on an iPhone. 2017 WL 4018064, at *1-3 (Cal. App. Ct. 2017). And in *Twitter, Inc. v. Taamneh*, the Court addressed the scope of aiding-and-abetting liability and found it lacking because Twitter did not engage in "affirmative misconduct." 598 U.S. 471, 499 (2023).

definition—that a "product" is "tangible personal property distributed commercially for use or consumption"—but omits the next: "Other items, *such as* real property and *electricity*, are products *when the context of their distribution and use is sufficiently analogous to the distribution and use of tangible property* that it is appropriate to apply the rules stated in this Restatement." Restatement (Third) of Torts § 19(a) (emphasis added).

So this issue does not turn on tangibility. Rather, it hinges on whether the product defects alleged by Jane "are analogous to tangible personal property in the context of their use and distribution." *In re Social Media*, 702 F. Supp. 3d at 849 (citing Restatement (Third) of Torts § 19(a)). Jane asserts that Roblox's app is defective because it has ineffective parental controls and safety settings. *See, e.g.*, Compl. ¶ 337(b) (failure to implement effective parental controls), ¶ 337(d) (failure to set default settings to the most protective option), ¶ 337(h) (failure to ban IP and MAC addresses of accounts associated with known abusers), ¶ 337(l) (failure to implement robust age and identity verification). Based on these defects, Roblox's app akin to tangible property because "[m]yriad tangible products contain parental locks or controls to protect children." *In re Social Media*, 702 F. Supp. 3d at 849. Consider "parental locks on bottles containing prescription medicine" and "parental locks on televisions that enable adults to determine which channels or shows young children should be permitted to watch unsupervised." *Id.*

Roblox contends that Jane's claims target Roblox's services involving the "facilitation of communications between users." Mot. 25. Framed that way, according to Roblox, Jane's product liability claims would raise "grave constitutional concerns" because they center on "ideas, thoughts, words, and information." *Id.* 25-26. But that

27

characterization of Jane's claims ignores her allegations that the app's defects all relate to ineffective parental controls and safety measures. *See* Compl. ¶ 337(a)-(m). These defects are "content-agnostic" because they "primarily relate to the manner in which young users are able to access" Roblox's app, "including whether their age is accurately assessed during the sign-up process and whether, subsequent to signing up, their activity and settings can be accessed and controlled by their parents." *In Social Media*, 702 F. Supp. at 849.

The cases that Roblox cites in support of its content-based argument are thus all inapplicable. *See* Mot. 25-26 (discussing cases alleging product defects relating to a "violent rap song," magazine articles, and TV shows). Roblox's other cases should also be disregarded. The courts in *Jacobs v. Meta Platforms, Inc.* and *Zienck v. Snap, Inc.* "offered minimal, if any, rationale" for classifying the apps at issue as services and not products. *In re Social Media*, 702 F. Supp. 3d at 843 & n.36. And the court in *Intellect Art Multimedia, Inc. v. Milewski* did not "reach this novel issue" of whether a website is a product. 899 N.Y.S.2d 60 (N.Y. Super. Ct. 2009) The remaining cases are inapposite. *See, e.g.*, *Jimenez v. Super Ct.*, 29 Cal. 4th 473, 479 (2002) (window installer not subject to product liability claims, for "persons providing only services are not subject to strict products liability").[7]

---

[7] Roblox also argues in a footnote that the defects in its app were not the "producing cause" of Jane's injuries because the predator's actions were "not foreseeable to Roblox" and therefore were a new and independent cause. Mot. 27 n.10. That argument is meritless. "[F]oreseeability is an element of proximate cause, but not of producing cause." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667 n.25 (Tex. 1999) (citation omitted). In any event, as alleged throughout the Complaint, the predator's criminal conduct was entirely foreseeable to Roblox, *see* Compl. ¶¶ 72-28, and "an actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of [the actor's negligence]." *Travis v. Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).

**C.      Roblox Fails to Show that Jane's Fraud Claim Should Be Dismissed**

Jane's fraud claim against Roblox is based on concealment. Fraudulent concealment is "[f]raud by non-disclosure"—*i.e.*, "the defendant deliberately failed to disclose material facts." *Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). As a result, Jane need not, as Roblox asserts, identify specific misrepresentations that she or her mother relied on. Mot. 27-28. Jane's claim is fraud by *omission*—that Roblox failed to disclose the "defective conditions of its app" in 2019 when Jane created a Roblox account, including that the app was unsafe because the parental controls offered by Roblox and set by Jane's mother were ineffective. *See* Compl. ¶¶ 206-07, 220, 225. Jane further alleges that these defects were known only to Roblox and that, had Roblox disclosed these defects, her mother would not have permitted her to use the app. *Id.* ¶¶ 223-29. Nothing more is required to state a fraudulent concealment claim and satisfy Rule 9(b). *See McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1366, 1368-69 (N.D. Ga. 2013) (holding that plaintiffs asserted a plausible claim of fraudulent concealment under Texas law and Rule 9(b) because they alleged that defendant failed to disclose a safety defect and that they would not have purchased the product had they known of the defect).

Roblox wrongly asserts that this claim is not plausible because Jane has failed to allege that Roblox owed her a duty to disclose the defective conditions of its app. Mot. 29. Roblox argues that a duty to disclose arises "only" where there is a "fiduciary or confidential relationship." *Id.* That is incorrect under Texas law, *see Bombardier*, 572 S.W.3d at 220, and Jane's fraudulent concealment claim thus "should not be dismissed at this stage solely on the basis that [Roblox] did not have a fiduciary or confidential

relationship with [Jane]," *Debut Sols. LLC v. Axion Structural Innovations, LLC*, No. 21-cv-56, 2021 U.S. Dist. LEXIS 268851, at *16 (S.D. Tex. Dec. 23, 2021).

Roblox also contends that Jane has not alleged that she was ignorant of the facts and did not have an equal opportunity to discover them, Mot. 30, but that ignores and mischaracterizes the allegations in the Complaint. Roblox describes the concealment that Jane alleges in the Complaint as the fact that "others might send objectionable communications," *id.*, but Jane's claim is based on Roblox's failure to disclose "defects inherent in the design" of the app, including that the parental controls were ineffective, Compl. ¶¶ 206, 220, 225. Jane further alleges that these defects were "known only to" Roblox and that she "could not have discovered such serious safety risks." *Id.* ¶ 223.[8]

## **CONCLUSION**

For the foregoing reasons, Roblox's motion should be denied.

Dated: July 25, 2025                    Respectfully submitted,

                                        */s/ Paige Boldt*
                                        Paige Boldt, Attorney in Charge
                                        State Bar No. 24082626
                                        SDTX No. 3108588
                                        325 North Saint Paul Street, Suite 3100

---

[8] The Court should also reject Roblox's request to take judicial notice of documents from Roblox's website. *See* ECF No. 32-1. Roblox offers these documents for the supposed fact that "Roblox's Parent's Guide disclosed the previous risks that Plaintiff claims were fraudulently concealed." Mot. 28. That purported fact is highly disputed, so it is not appropriate for judicial notice. *See* Fed. R. Civ. P. 201(b) (court may take judicial notice only of facts that are "not subject to reasonable dispute"). These documents were also not incorporated by reference in the Complaint. Roblox does not even try to argue that they are "referenced in the complaint," let alone that they "are central to plaintiff's claims." *Inclusive Cmtys. Project v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

Dallas, TX 75201
Telephone: (469) 966-2232
Facsimile: (215) 735-2211
pboldt@anapolweiss.com

Alexandra M. Walsh*
Kristen Feden*
D. Patrick Huyett*
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
awalsh@anapolweiss.com
kfeden@anapolweiss.com
phuyett@anapolweiss.com

**COOPER MASTERMAN**
Davis Cooper (admitted *pro hac vice*)
Joseph Masterman (admitted *pro hac vice*)
1717 Pennsylvania Ave. NW, Suite 1025
Washington, DC 20006
Telephone: (202) 866-0171
davis@coopermasterman.com
joe@coopermasterman.com

*\*Pro Hac Vice* motions pending

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2025, I presented the foregoing document to the Clerk of Court for filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Paige Boldt*
Paige Boldt
