**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

|  |  |
|---|---|
| MARY DOE, as next friend of minor plaintiff, JANE DOE,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>ROBLOX CORPORATION and DISCORD INC.,<br>　　　　　Defendants. | CIVIL ACTION NO. 3:25-cv-00128 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DISCORD INC.'S**
**MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

STANDARD OF REVIEW .................................................................................. 4

ARGUMENT....................................................................................................... 5

  I.   Section 230 Does Not Preempt Any of Jane's Claims ............................. 5

  II.  The First Amendment Does Not Bar Jane's Claims............................... 16

  III.   Jane's Claims Should Not Be Dismissed on the Merits ..................... 18

    A.  Jane Has Alleged Causation................................................................ 18

    B.  Discord's App Is a Product. ................................................................ 21

    C.  Jane Has Alleged that Discord Owed Her Multiple Duties ................. 23

    D.  Jane Has Pleaded a Plausible Fraudulent Concealment Claim............ 28

CONCLUSION .................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Salesforce, Inc.*, 123 F.4th 788 (5th Cir. 2024) ..................................................passim

*A.B. v. Salesforce.Com, Inc.*, No. 20-cv-01254, 2021 U.S. Dist. LEXIS 181885 (S.D. Tex. Mar. 22, 2021) ............................................................................................................ 20, 26

*Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588 (Tex. 1986) ........................................... 27

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) ............................................. 6, 9, 11

*Barnes*, 570 F.3d at 1100 .................................................................................................. 7

*Barnes*, 570 F.3d at 1102 .................................................................................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 5

*Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213 (Tex. 2019). 28

*Buchanan v. Rose*, 159 S.W.2d 109 (Tex. 1942) ...................................................... 23, 26

*Butler Aviation Int'l v. Whyte*, 6 F.3d 1119 (5th Cir. 1993) ........................................... 21

*Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024) ......................................... 8

*Colonial Sav. Assoc. v. Taylor*, 544 S.W.2d 116 (Tex. 1976) ......................................... 28

*Colvin v. Roblox Corp.*, 725 F. Supp. 3d 1018 (N.D. Cal. 2024) ..................................... 25

*Crosby v. Twitter, Inc.*, 921 F.3d 617 (6th Cir. 2019) ..................................................... 20

*Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025) ............................................................... 15

*Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) .......................................passim

Doe v. MySpace, Inc., 474 F. Supp. 2d 843 (W.D. Tex. 2007) ........................................ 26

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008).................................................... 14

*El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex. 1987)..................................................... 24

*Est. of Bride by & through Bride v. YOLO Techs., Inc.*, 112 F.4th 1168 (9th Cir. 2024) ... 8, 11, 14

Ethridge v. Samsung SDI Co., 604 F. Supp. 3d 556 (S.D. Tex. 2022)............................. 27

*Ford Motor Co. v. Dallas Power & Light Co.*, 499 F.2d 400 (5th Cir. 1974) ................. 26

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007)................................................ 18

*Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263 (5th Cir.)......................................... 5, 15

*Gillis v. Cmty. Prods., LLC*, No. 22-cv-00080, 2024 U.S. Dist. LEXIS 154619 (W.D. Tex. Aug. 28, 2024) ......................................................................................................... 24

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990)........................... 25

*Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874 (Tex. App. Ct. 2002)....................................... 21

*Hayes v. United States*, 899 F.2d 438 (5th Cir. 1990)........................................................24

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019) ...................9

*Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784 (Tex. 1988) .....................21

*Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103 (Tex. App. Ct. 2000)....................21

*Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex. 1999) .......................................18

*In re Facebook*, 625 S.W.3d 80, 93 (Tex. 2021)..................................................................16

*In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653 (Tex. 2023) ..........................................28

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849
    (N.D. Cal. 2024).................................................................................................................12

*In re Social Media*, 702 F. Supp. 3d 809 (N.D. Cal. 2023) ..................................12, 13, 22

*Inclusive Cmtys. Project v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019) .................29

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ...........................................12, 13, 15

*Long v. Williams*, No. 09-cv-3323, 2010 U.S. Dist. LEXIS 163828 (S.D. Tex. July 29,
    2010) .....................................................................................................................................25

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13 (2020).................7

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802 (2019) ....................................16

*McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1366 (N.D. Ga. 2013) ............................28

*Millhouse v. Wiesenthal*, 775 S.W.2d 626 (Tex. 1989).................................................18, 20

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)..................................................................17

*Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983).....................................................23

*Richardson v. Axion Logistics, LLC*, 780 F.3d 304 (5th Cir. 2015)....................................5

*Salesforce*, 123 F.4th at 796.....................................................................................................9

*San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312 (Tex. App. Ct. 2000) ..27

*Social Media Cases*, JCCP No. 5255, 2023 Cal. Super. LEXIS 76992 (Cal. App. Ct.
    2023) .....................................................................................................................................25

*Stratton Oakmont, Inc. v. Prodigy Services Co.*, No. 31063/94, 1995 WL 323710 (N.Y.
    Sup. Ct. May 24, 1995)........................................................................................................6

*Travis v. Mesquite*, 830 S.W.2d 94 (Tex. 1992)...................................................................20

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ....................................................................26

*Werner Enters., Inc. v. Blake*, No. 23-0493, 2025 Tex. LEXIS 585 (Tex. 2025) ........18, 19

**Statutes**

47 U.S.C. § 230 ..................................................................................................................5, 6

**Other Authorities**

1 Smolla, Law of Defamation § 1:17 (2d ed.)........................................................ 17

2 Smolla & Nimmer on Freedom of Speech § 23:1 .......................................... 17

Danielle Keats Citron & Benjamin Wittes, *The Internet Will Not Break: Denying Bad Samaritans § 230 Immunity*, 86 Fordham L. Rev. 401 (2017) ........................................ 5

Restatement (Second) of Torts § 550 (1977)..................................................... 11

Restatement (Third) of Torts § 19 ..................................................................... 21

Restatement (Third) of Torts: Phys. & Emot. Harm § 18 (2010)..................... 11

Restatement (Third) of Torts: Prods. Liab. § 2 ................................................. 12

**Rules**

Fed. R. Civ. P. 8 .................................................................................................. 4

## INTRODUCTION

Minor Plaintiff Jane Doe ("Jane") was groomed and raped by a predator whose criminal acts were facilitated and enabled by Defendant Discord Inc. ("Discord")'s dangerous marketing, operation, and design of its eponymous online communications application ("app"), Discord. Sadly, this case is no outlier. Over the years, thousands of children have been subjected to sexual grooming, exploitation, and assault made possible by the Discord app—which Discord aggressively, and deceptively, markets as safe for children.

Jane has bravely come forward to hold Discord accountable for its conduct. Discord's motion to dismiss Jane's case should be denied.

*First*, Section 230 does not preempt any of Jane's claims. Section 230 has been construed to bar claims that treat internet platforms like traditional publishers, *i.e.*, that seek to fault platforms for failing to responsibly monitor third-party content. None of Jane's claims would require Discord to touch a piece of third-party content. As far as those claims are concerned, Discord may keep publishing whatever it wants. Like any other business, it just cannot lie, fail to warn, or expose users to unreasonable danger. Discord's failure to adhere to those basic duties, not any publisher duties, is what subjects it to liability here.

*Second*, the First Amendment does not bar any of Jane's claims. Discord invokes no case or doctrine—because there is none—to support the notion that the First Amendment broadly bars run-of-the-mill product-liability claims in *private* litigation wherever they implicate activity that the First Amendment might protect from *government* regulation.

*Third*, Jane's claims are all plausible on the merits. For Jane's negligence-based claims (Counts 2-5) and product-liability claims (Counts 6-7), she alleges detailed facts showing that Discord's conduct caused her injuries. Her detailed allegations likewise establish that her negligence claims are plausible because Discord owed her multiple duties. Her product-liability claims are also viable because Discord is a product, not a service. And she has adequately pleaded a fraudulent-concealment claim (Count 1) based on Discord's failure to disclose material facts about the ineffectiveness of its parental controls and safety measures.

## BACKGROUND

Discord is an app that allows users to chat over voice, video, and text messaging. Compl. ¶ 137. Although many users on Discord are adults, Discord directly markets its app to young users. *Id.* ¶ 139. Discord advertises its app for school clubs and also markets to young users with features such as custom emojis. *Id.* In the last several years, Discord has exploded in popularity among young users, and the average age of a Discord user is 16 years old. *Id.* ¶ 140. Some users are as young as eight years old. *Id.* ¶ 142.

Discord is easily accessible to children. To create an account, a user need only provide an email address, display name, username, password, and birthdate. *Id.* ¶ 141. Discord does not require users to verify their age or identity upon sign-up, so they can easily misrepresent that they are younger or older than their actual age. *See id.* ¶ 142.

Discord has gone to extraordinary lengths to market its app as safe for children. *See id.* ¶¶ 145-51. Discord assures parents that it "built Discord to be different and work[s] relentlessly to make it a fun and safe space for teens." *Id.* ¶ 147. The app, according to

Discord, is "built on Safety," and "[s]afety is at the core of everything we do and a primary investment as a business." *Id*. Discord claims to make its app safe by "design and default." *Id*. ¶ 148. Discord has also extensively touted the effectiveness of its parental controls and safety measures. *Id*. ¶ 149.

Nothing could be further from the truth. Discord attracts countless child predators drawn to the app because it provides such easy access to children. *Id.* ¶ 164. The results have been devastating. For years, Discord has enabled predators to identify, target, groom, and exploit innocent children. *See id.* ¶¶ 157-76. Many of these child victims have been raped, assaulted, kidnapped, and coerced into sending sexually explicit images of themselves. *See id.* ¶¶ 164-76.

The dangers pervading Discord are the direct result of actions taken by the company in designing, operating, and managing the app. *See id.* ¶¶ 193-204. Like most tech companies, Discord has pursued a strategy of growth at any cost. *See id.* ¶¶ 184-92. To that end, Discord deliberately designed and operated its app in ways that prioritized growing the number of users of its app over the safety of children. *See id.* ¶¶ 193-204.

Discord, for example, implemented ineffective parental controls that it knew created an illusion of safety for parents. *See id.* ¶¶ 199, 250(c). It allowed users to create accounts without any effort to confirm age or identity. *See id.* ¶¶ 200-01. And Discord maintained these dangerous features despite clear notice—from years of public reports—that they created a significant risk of harm to minor users. *Id.* ¶¶ 157-76, 250(c).

Children have paid the price for Discord's explosive growth. Jane is one of them. On Discord, Jane was repeatedly sent sexually explicit images by predators and was

coerced into sending explicit images of herself. *Id.* ¶ 210. Then, in 2024, she was once again targeted on Defendant Roblox Corporation's app by a predator who lured her onto the Discord app. *Id.* ¶ 211. Using Roblox and Discord to capture Jane's trust, the predator then coerced her into sending sexually explicit images of herself. *Id.* ¶¶ 211-12. Soon thereafter, when Jane was 15 years old, the predator traveled to her home, raped her, and recorded the incident on his phone. *See id.* ¶¶ 206, 213. After Jane's parents learned about the abuse, a criminal investigation ensued, and an arrest warrant was issued for the predator. *Id.* ¶ 214.

Jane's life has been devastated. She has suffered significant emotional and psychological injuries, her grades have plunged, and she is unwilling to engage with her peers. *Id.* ¶ 216. She has required psychological intervention, and she continues to grapple with anxiety, moments of disassociation, and excessive doubts about her future. *Id.* ¶ 217.

On April 30, 2025, Jane filed this lawsuit seeking to hold Discord and Roblox liable for causing the horrific abuse that she suffered as a result of their conduct. She has asserted claims of (1) fraudulent concealment, (2) negligence – general, (3) negligence – failure to warn, (4) negligence – unreasonable design, (5) negligent undertaking, (6) strict liability – design defect, and (7) strict liability – failure to warn. *Id*. ¶¶ 218-369.

Discord has moved to dismiss Jane's case. That motion should be denied entirely.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include sufficient factual allegations "to raise a right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, the Court must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 304 (5th Cir. 2015) (citation omitted).

## ARGUMENT

### I.    Section 230 Does Not Preempt Any of Jane's Claims

Section 230 protects operators of internet platforms like Discord from claims based on a specific theory of liability—namely, from liability as the publisher of other people's content. But Congress expressly preserved all claims that are "consistent with" this protection, *i.e.*, claims based on any other theory of liability. 47 U.S.C. § 230(e)(3). Jane's claims are all based on other theories of liability. Thus, all are consistent with Section 230's "narrow language and its purpose," and none are preempted. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016).[1]

Courts generally agree that, "[t]o understand what Congress was trying to do when it passed § 230, it is helpful to start with the case that prompted its adoption." Danielle Keats Citron & Benjamin Wittes, *The Internet Will Not Break: Denying Bad Samaritans § 230 Immunity*, 86 Fordham L. Rev. 401, 404–05 (2017); *see, e.g.*, *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 285 (5th Cir.), *aff'd*, 145 S. Ct. 2291 (2025). That case was *Stratton Oakmont, Inc. v. Prodigy Services Co.*, No. 31063/94, 1995 WL 323710 (N.Y. Sup.

---

[1] The Fifth Circuit has described its constructions of Section 230 as "consistent with the precedent of our sister circuits." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 796 (5th Cir. 2024). This brief therefore cites other-circuit caselaw that aligns with this Circuit's caselaw.

Ct. May 24, 1995), a New York decision that would have rendered internet platforms liable as publishers of all content that their users posted if the platforms chose to remove any harmful posts. Given the daily volume of internet content, platforms' only real option was to keep it all, the good and the bad. As part of the Communications Decency Act of 1996, 110 Stat. 133, Congress enacted Section 230—captioned "Protection for private blocking and screening of offensive material"—to "encourage" platforms to keep removing the bad. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009) (quotation marks omitted).

The provisions that matter are in Section 230(c), which, as courts often note, is similarly captioned "Protection for 'Good Samaritan' blocking and screening of offensive material." *See, e.g.*, *Paxton*, 145 S. Ct. at 2305 n.4 (noting several indicative captions). As relevant here, Section 230(c)(1) states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[2] Section 230(c)(2) states that "[n]o provider . . . of an interactive computer service shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." *Id*. § 230(c)(2)(A).

---

[2] Discord is an "interactive computer service." 47 U.S.C. § 230(f)(2). An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet," which can include even the "interactive computer service" (*e.g.*, Discord) itself. *Id*. § 230(f)(3).

These twin provisions directly resolve the Catch-22 that *Stratton Oakmont* could have created. Section 230(c)(2) allows platforms to take down certain user posts, while Section 230(c)(1) shields platforms from liability for leaving up others. *See Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020) (statement of Thomas, J.). In this way, Section 230 was meant to foster a safe internet, not "a lawless no-man's-land." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 853 (9th Cir. 2016) (quotation marks omitted); *accord Paxton*, 145 S. Ct. at 2305 n.4 ("Congress thereby aimed to spur the development and use of filtering technology so that parents could prevent their children from accessing sexually explicit content online.").

Discord undisputedly did not take down any of the harmful content at issue, as it could have done under Section 230(c)(2). The "immunity" Discord asserts must therefore come from Section 230(c)(1), which does not "mention 'immunity' or any synonym." *Barnes*, 570 F.3d at 1100 (quotation marks omitted). Even so, some courts have construed this provision to protect platforms from liability simply for hosting third-party content. To whatever extent the provision provides this so-called immunity, however, it has two significant limitations, both of which foreclose all of Discord's arguments.[3]

*First*, Section 230(c)(1) can protect platforms only from liability *as* publishers of third-party content. Congress again flagged this limitation in the caption: "Treatment of publisher or speaker." 47 U.S.C. § 230(c)(1). This provision will therefore bar a claim only

---

[3] Some further background on Section 230, and its appropriate limitations, is provided in footnote 3 of Jane's contemporaneously filed opposition to Roblox's motion to dismiss. To the extent Discord relies on cases that exceed these limitations, the statute controls.

insofar as the plaintiff alleges that a platform breached a duty to act as a publisher would. Publishers "revie[w], edi[t], and decid[e] whether to publish or to withdraw . . . third-party content." *Barnes*, 570 F.3d at 1102. By approving what it publishes, a publisher may make itself liable for any injuries therefrom—defamation being the classic example (and the alleged injury in *Stratton Oakmont*). *See Est. of Bride by & through Bride v. YOLO Techs., Inc.*, 112 F.4th 1168, 1175 (9th Cir. 2024). Under Section 230(c)(1), plaintiffs may not claim that a platform *should* have exerted such control over any content that it merely hosts.

Yet platform operators do plenty more than host other people's content. They enter contracts, design products, and generally engage in normal corporate activities that give rise to normal corporate duties that have nothing to do with hosting third-party content. When applying Section 230 to a given case, then, courts consider the "'right' from which the duty springs" and what the duty would "requir[e] the defendant to do." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024). If the duty "springs from something separate from the defendant's status as a publisher"—*e.g.*, from "an agreement" or the defendant's "distinct capacity as a product designer"—Section 230 "does not apply." *Id.*

Section 230 likewise does not apply if the duty a plaintiff invokes does not "oblig[e] the defendant to monitor third-party content." *Id.* "In making this determination," the Fifth Circuit has said, "a court can hypothesize what would happen if the allegations were true and the defendant were found liable." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 795 (5th Cir. 2024). If "the duty would *necessarily require* an internet company to monitor, alter, or remove third-party content," then the claim treats the platform as a publisher, and Section 230 applies. *Id.* (emphasis added; cleaned up). If not, then not. Moderating third-party

content must therefore "be more than one option" the defendant has to satisfy the duty; "it must be the only option." *YOLO*, 112 F.4th at 1177 n.3.

*Second*, though Section 230 bars liability for simply hosting third-party content, "[i]t is not enough that third-party content is involved." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019). Platforms exist to host content. "Publishing activity is," accordingly, "a but-for cause of just about everything [platforms are] involved in." *Internet Brands*, 824 F.3d at 853. Applying Section 230 wherever third-party content is involved—*i.e.*, wherever third-party content could be called a but-for cause of a plaintiff's injury—would therefore "eviscerate" the statute. *HomeAway.com*, 918 F.3d at 682 (quotation marks omitted). A "mechanical, but-for" test might align "with a statute that read [that no platform] 'shall be held liable for conduct involving third-party speech.' But that is not the statute Congress enacted." *Salesforce*, 123 F.4th at 794. Under the statute Congress did enact, platform operators may be sued under any "theory of liability" that is not premised on the claim that the operator should have kept a better eye on the platform. *Barnes*, 570 F.3d at 1101. That is true even if a plaintiff's injury stems from another platform user's words or actions. And in this Circuit, that is true even if third-party content is purportedly the "*only link*" between the platform and the injury. *Salesforce*, 123 F.4th at 796 (emphasis added).

Together, these limitations require a "functional, claims-analysis approach," which courts apply claim-by-claim, allegation-by-allegation. *Id*. at 793. This approach enables courts to catch artful pleading while "extending section-230 immunity no further than the text requires." *Id.* Respecting statutory limits is not artful pleading. The Fifth Circuit

9

recognized as much in *Salesforce*, which contains this Circuit's most recent "exegesis" of Section 230. *Id*. (quotation marks omitted). The plaintiffs there were trafficked for sex "through advertisements posted on Backpage," a now-defunct platform, and sued Backpage's software partner (Salesforce) for participating in a sex-trafficking venture in violation of 18 U.S.C. § 1595. *Id*. at 791. Obviously, their claims implicated third-party content (the Backpage ads). But just as "obvious[ly]," the duty they invoked—namely, "a statutory duty to not knowingly benefit from participation in a sex-trafficking venture"— did "not derive from Salesforce's status or conduct as a publisher . . . and would not require Salesforce to exercise publication or editorial functions to avoid liability." *Id*. at 797. It "simply require[d] that Salesforce not sell its tools and operational support to a company it knew (or should have known) was engaged in sex trafficking." *Id*. That is a far cry from "quintessential" publisher activity. *See id*. at 797–98. And thus, as Discord fails to mention, Section 230 did not apply.

Under *Salesforce* and the widely shared principles it applies, Section 230 does not preempt any of Jane's claims.

***Fraudulent Concealment (Count 1)***. Jane's fraudulent-concealment claim arises from Discord's duty to be truthful and not misleading in its own representations. As the Ninth Circuit held in *Barnes*, platforms remain bound by their own promises, including promises to moderate third-party content. *See* 570 F.3d at 1107. And as the same court held in *YOLO*, representations are akin to promises. Thus, after the defendant had "represent[ed] to its users that it would unmask and ban abusive users"—an act of content moderation— Section 230 did not bar misrepresentation claims when the defendant's failure to moderate

subjected minor plaintiffs to abuse over its app. 112 F.4th at 1179; *see also Salesforce*, 123 F.4th at 796–97 (relying on *Barnes* and *YOLO*). Simply put, "[p]romising . . . is not synonymous with the performance of the action promised." *Barnes*, 570 F.3d at 1107.

Here, Jane specifically alleges fraud by *omission*. But that makes no difference to Section 230. Where a defendant "intentionally prevents [a plaintiff] from acquiring material information," the defendant "is subject to the same liability . . . *as though he had stated the nonexistence of the matter*."   Restatement (Second) of Torts § 550 (1977) (emphasis added). In *YOLO*, the defendant mispresented that it would stop minor abuse; here, Discord concealed that it does not stop that abuse (while otherwise touting the platform's purported safety). And neither case arises from a purported duty to moderate user content. To use Section 230 terms: does the duty alleged here spring from Discord's status as a publisher? No. It springs from any corporate defendant's duty to tell the whole truth about its product. Is moderating third-party content the only way Discord could satisfy that duty? No. Discord could simply tell the whole truth. Section 230 thus does not apply.

**Failure To Warn (Negligence, Count 3; Strict Liability, Count 7)**.[4] Jane's failure-to-warn claims arise from Discord's duty to tell users about the dangers it knows or should know are lurking in its product. This is another duty borne by defendants generally—from companies that run powerlines to drivers who fail to use a turn signal—not just publishers. *See, e.g.*, Restatement (Third) of Torts: Phys. & Emot. Harm § 18 (2010). Discord bore this

---

[4] As also explained in footnote 4 of Jane's opposition to Roblox's motion, it makes more sense for these purposes to group claims based on what they require (*e.g.*, truthfulness, adequate warnings, or safe design) rather than on the liability standard, as Discord does.

duty because of what it learned or should have learned "independently of its publishing activity," including through the public reports cited throughout the Complaint. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 885 (N.D. Cal. 2024) ("*In re Social Media*"); *see* Compl. ¶¶ 154–204 & nn.179–256. "[N]ot one court" has held "that Section 230 bars such failure-to-warn theories in general." *In re Social Media*, 753 F. Supp. 3d at 887. To the contrary, many such claims have been allowed to proceed, *see id*. at 887–88 (surveying), including claims based on the same failures alleged here, *see In re Social Media*, 702 F. Supp. 3d 809, 829 (N.D. Cal. 2023).

As the Ninth Circuit held in *Internet Brands*, enforcing a duty to warn "would not require [the defendant] to remove any user content or otherwise affect how it publishes or monitors such content." 824 F.3d at 851; *see also Salesforce*, 123 F.4th at 795 (relying on *Internet Brands*). Just so here. Does the duty alleged spring from Discord's status as a publisher? No. It springs from any defendant's duty to warn about known dangers. Could Discord satisfy that duty only by moderating third-party content? No. Discord could provide adequate warnings. So again, Section 230 does not apply.

***Unreasonable/Defective Design (Negligence, Count 4; Strict Liability, Count 6)***. Jane's design-defect claims arise from Discord's duty as product designer. This duty "differs markedly from the duties of publishers": product designers must "refrain from designing a product that poses an unreasonable risk of injury"; publishers "generally have no similar duty." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021); *see also* Restatement (Third) of Torts: Prods. Liab. § 2(d)–(f) (explaining the theories underlying design-defect claims). Jane does not allege that Discord's platform is defective because

Discord fails to police user content. The platform is defective because it lacks the features needed to protect minors—including, once again, the exact kinds of defects that Section 230 has already been found not to protect. *Compare* Compl. ¶¶ 294, 337 (discussing, among other things, Discord's lack of "[e]ffective parental controls," "robust age and identity verification," and adequate "reporting protocols"), *with In re Social Media*, 702 F. Supp. 3d at 829 (holding that Section 230 does not bar design-defect claims based on those same deficiencies).

Does the duty alleged here spring from Discord's status as a publisher? No. It springs from any product designer's duty to design a reasonably safe product. Could Discord satisfy that duty only by moderating third-party content? No. Discord could provide effective parental controls, and every other necessary safety feature that the Complaint identifies, "without altering the content [its] users generate." *Lemmon*, 995 F.3d at 1092. So Section 230 does not apply here, either.

**General Negligence (Count 2); Negligent Undertaking (Count 5)**. The analysis is the same for Jane's other negligence claims. Her general-negligence claim incorporates the above-discussed duties. As with her fraudulent-concealment, failure-to-warn, and design-defect claims, Jane does not allege that Discord was negligent because Discord failed to censor any content she saw or conversation she had on the platform. Discord was negligent because its "own" acts and omissions—including concealing material facts, failing to warn of known dangers, and designing an unsafe product—subjected Jane to an unreasonable risk of harm. Compl. ¶¶ 250–51. Similarly, Jane's negligent-undertaking claim arises from the duty that Discord voluntarily assumed by purporting to render "parental control

services and account safety services" to her parents. *Id*. ¶ 305. As discussed, those features are "necessary for the protection of minor users," *id*. ¶ 306, but, in this case, were woefully ineffective. For the reasons above, these claims neither arise from Discord's status as a publisher nor seek specifically to fault Discord for failing to act like a responsible publisher. Section 230 thus does not apply to any of Jane's claims.

In response, Discord breezes through Jane's claims, forgoing the "exacting" claim-by-claim analysis that is necessary to "avoid exceeding the scope of the immunity provided by Congress." *YOLO*, 112 F.4th at 1176 (cleaned up). Discord instead rests its arguments predominantly on a few cases, which it misconstrues.

Contrary to Discord's suggestion, the Fifth Circuit did not hold in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), that Section 230 would preempt all future negligence claims against internet platforms. The Fifth Circuit itself has clarified *MySpace* in more recent opinions, rejecting "misguided reading[s] of *MySpace* that," like Discord's, are "akin to a but-for analysis." *Salesforce*, 123 F.4th at 794. In *Paxton*, as here, the party invoking Section 230 "argued that *MySpace* stood for the proposition that [Section 230] provided broad immunity . . . to Web-based service providers for *all claims* stemming from their publication of information created by third parties." *Id*. (quoting *Paxton*, 95 F.4th at 286). To the contrary, the court explained that "the emphasis, properly placed, would read" that Section 230 "provide[s] broad immunity . . . to Web-based service providers for all claims stemming from their *publication of information created by third parties*." *Id*. (quoting *Paxton*, 95 F.4th at 286) (formatting altered). Accordingly, *MySpace* had construed Section 230 to bar "negligence liability *for* publishing communications," which

necessarily, and impermissibly, would have imposed a duty not to publish that content. *Paxton*, 95 F.4th at 285 (discussing *MySpace*, 528 F.3d at 418–19) (emphasis added).

As the Fifth Circuit later explained in *Salesforce*, that conventional construction of Section 230 was fully consistent with the "functional, claims-analysis approach" followed in other circuits, 123 F.4th at 793–94, where other negligence claims have been allowed to proceed, *see, e.g.*, *Lemmon*, 995 F.3d at 1092; *Internet Brands*, 824 F.3d at 851; *In re Social Media*, 702 F. Supp. 3d at 829–30, 834. Thus, *MySpace* does not change any of the analysis above. Unlike the *MySpace* plaintiffs, Jane does not seek to fault Discord *for* publishing any communications. She asserts liability based on Discord's own actions and omissions. Section 230 does not immunize those. Neither could (nor does) *MySpace*.

Discord's remaining citations are similarly distinguishable. To the extent that any of those cases construe Section 230 to bar any type of claim that Jane brings, it was because the plaintiffs had explicitly invoked the type of duty that Section 230 forbids. For example, Discord emphasizes *Doe v. Grindr*, 128 F.4th 1148 (9th Cir. 2025), where the Ninth Circuit held that Section 230 barred a failure-to-warn claim. (Discord pays little to no attention to all the related claims that have proceeded against platforms in that circuit, notwithstanding their Section 230 arguments, as discussed above). But in *Grindr*, the plaintiff asserted "a duty *to suppress* matches and communications between adults and children," and the defendant had made only a "general statement" about the app's safety with no "independent knowledge" of its alleged dangers. *Id.* at 1153–54 (emphasis added). Here, Jane does not claim any duty to suppress, and her Complaint alleges Discord's extensive independent knowledge of the app's dangers and repeated statements concealing those dangers. And

15

unlike how the Texas Supreme Court interpreted the allegations of *In re Facebook, Inc.*, none of Jane's claims—as detailed in the Complaint and explained herein—are "premised on second-guessing" any of Discord's "decisions relating to the monitoring, screening, and deletion of third-party content." 625 S.W.3d 80, 93 (Tex. 2021) (brackets omitted).[5]

Section 230 plays an important role. But that role does not include permitting Discord to subject minors to sexual predators by preempting claims where, as here, no claim seeks to treat Discord like a publisher. That would be an odd end for a statute meant to encourage "Good Samaritan" content moderation.

## II.    The First Amendment Does Not Bar Jane's Claims

The First Amendment prohibits the Government from restraining speech. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019). Jane is not the Government. Nor can her suit be somehow construed as "state action." Seeking recovery for personal injuries is not "a function traditionally exclusively reserved to the State." *Id*. (quotation marks omitted). By contrast, nearly every case that Discord cites involved a First Amendment challenge to a criminal prosecution (an exclusive government function) or to a federal, state, or local speech regulation. The one exception is Discord's reference

---

[5] That is not to deny the tension between *In re Facebook* and this Circuit's caselaw. Noting "room for disagreement" over Section 230's scope, the Texas Supreme Court expressly adopted the "broader view," which it thought was consistent with the Fifth Circuit's *MySpace* decision. *In re Facebook, Inc.*, 625 S.W.3d 80, 83, 92 (Tex. 2021). That view was so broad as to include the roundly rejected but-for test. *See id*. at 90 (suggesting that the "national consensus" was "that all claims against internet companies stemming from their publication of information created by third parties . . . are barred") (quotation marks omitted). As discussed above, the Fifth Circuit has since explained why that reading of *MySpace*, and of Section 230, is incorrect. And that is what controls here.

16

to defamation. *See* Discord Mot., Dkt. No. 33, at 15 (June 27, 2025). Defamation is, to be sure, an area of tort law that modern cases have constitutionalized (and that has bred confusion ever since). *See* 1 Smolla, Law of Defamation § 1:17 (2d ed.); 2 Smolla & Nimmer on Freedom of Speech § 23:1. First Amendment values therefore do inform whether a statement can be considered defamatory and, thus, outside the First Amendment.[6]

That the First Amendment might define the scope of some torts, however, does not mean that the First Amendment prohibits all torts that might implicate speech—as indicated by Discord's lack of any support for that much broader proposition. If that were the rule, many uncontroversial holdings would suddenly make no sense. For example, when the Third Circuit recently concluded that TikTok's algorithm constituted First Amendment speech under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), it did not then conclude that the First Amendment barred personal-injury claims from an accidental suicide allegedly caused by content that the algorithm had served up. *See Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024). The upshot was, instead, that Section 230 *did not bar those claims*, because they were based on first-party (not third-party) speech. *See id*. At most, therefore, Discord's First Amendment argument only further undermines its Section 230 arguments.

---

[6] Fraud is likewise unprotected speech. Appropriately, therefore, Discord (unlike Roblox) does not assert a First Amendment defense against Jane's fraudulent-concealment claim.

## III.    Jane's Claims Should Not Be Dismissed on the Merits

### A.    Jane Has Alleged Causation

Discord asks the Court to dismiss Jane's negligence and product-liability claims for lack of proximate cause. Mot. 16-17. But "proximate cause is usually a question of fact," *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989), and Jane has alleged facts supporting causation for each of her negligence and product-liability claims.

While the standards for causation in negligence and strict liability are similar, they differ in a key respect. Whereas negligence requires a showing of proximate cause, "producing cause" is the test in strict liability. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667 (Tex. 1999). "Proximate and producing cause differ in that foreseeability is an element of proximate cause, but not of producing cause." *Id.* at 667 n.25 (citation omitted).

That said, causation for negligence and strict liability both require a showing of "cause in fact." Cause in fact has two components: "(1) but-for causation, and (2) substantial-factor causation." *Werner Enters., Inc. v. Blake*, No. 23-0493, 2025 Tex. LEXIS 585, at *13 (Tex. 2025) (quotation marks omitted); *see also Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007) (holding that the "essential components" of producing cause are "(1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred"). Discord does not seem to contest but-for causation—nor could it because much of the abuse Jane experienced occurred on Discord. Compl. ¶¶ 211-12. That leaves whether Jane has adequately alleged that Discord's negligence and product defects were a substantial factor in causing her injuries. She has.

18

At base, the substantial-factor requirement ensures that liability is imposed on a party that "is actually responsible for the harm." *Blake*, 2025 Tex. LEXIS 585, at *15. It involves a "practical" application of the "test of common experience, to human conduct" and serves to determine "whether a defendant's blameworthy act was sufficiently related to the resulting harm to warrant imposing liability for that harm on the defendant." *Id.* (citation omitted).

Jane has alleged that Discord's negligence and product defects were sufficiently related to the harm she suffered. Discord marketed its app as a safe and fun place for children to communicate. *See* Compl. ¶¶ 139, 145-53. But as Discord well knew, the reality was far different as the result of its conduct in designing, operating, and managing the app. *See id.* ¶¶ 159-76, 250, 193-204. Discord included defective and dangerous features in its app that created a hunting ground for child predators and failed to warn of those dangers after the company was fully aware of them. *See id.* ¶¶ 250, 264-68, 271-73, 283-85, 293-96, 329-38, 356-61. Discord also provided parental controls and safety services that it knew were ineffective but would lull parents into a false sense of safety. *See id*. ¶¶ 199, 305-06, 312-14. Discord also enabled predators to easily transition vulnerable children from Roblox to Discord. *See id*. ¶¶ 178. These negligent acts and product defects did not "merely create the condition which made the injury possible." *Blake*, 2025 Tex. LEXIS 585, at *3 (citation omitted). They were the driving force—or a "substantial factor"—that caused Jane's injuries. *See id.* ¶¶ 255, 274, 298, 315, 343, 365.

Discord claims the causal chain has "has too many links" and "is severed by intervening causes." Mot. 16-17. It points the finger at Roblox or the predator's criminal

acts as the proximate cause of Jane's injuries. *Id.* at 17. But Discord cannot disclaim responsibility on this basis—"there can be more than one proximate cause of an injury," *Blake*, 2025 Tex. LEXIS 585, at *19, and "more than one producing cause of an event," *Ledesma*, 242 S.W.3d at 45. And "an actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of the actor's negligence." *Travis v. Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). The dangers that befell Jane were not only foreseeable but long *known* to Discord. *See* Compl. ¶¶ 159-76. Whether Discord is ultimately right is for the jury to decide based on the evidence presented. It is not an issue that should be resolved on a motion to dismiss. *See Millhouse*, 775 S.W.2d at 627 ("The determination of proximate cause is usually a question of fact.").

Discord's cases are inapposite. In *Crosby v. Twitter, Inc.*, the court held that Twitter did not proximately cause a terrorist attack because it simply provided a social media platform that the terrorist used to "view online content from ISIS." 921 F.3d 617, 625 (6th Cir. 2019). That is not this case. Jane does not claim that the predator's acts were caused by any content he viewed on Discord. Jane seeks to hold Discord liable for the affirmative acts that it took in operating and designing its app that created the risk that she would be harmed. Also distinguishable is *A.B. v. Salesforce.Com, Inc.*, No. 20-cv-01254, 2021 U.S. Dist. LEXIS 181885 (S.D. Tex. Mar. 22, 2021). There, the court found proximate cause lacking because Salesforce did not play any role in the sex trafficking of the plaintiff or in website advertisements that caused the sex trafficking. *Id.* at *15-16. Here, Jane alleges that Discord's negligent acts and product defects played a direct role in her abuse.

For these reasons, Discord's causation arguments fail.

**B.      Discord's App Is a Product.**

Jane has alleged plausible product liability claims (Counts 6 and 7) because Discord's app is a product, not a service. Discord's arguments to the contrary are wrong.[7]

The dividing line under Texas law is not—as Discord asserts—tangibility. If that were true, then electricity could never be a product. Yet, at the point of consumption, "electricity is considered a product for strict liability purposes." *Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874, 878 (Tex. App. Ct. 2002) (citing *Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, 785 (Tex. 1988)). Texas courts have also recognized that software can be product. *See, e.g.*, *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 n.2 (Tex. App. Ct. 2000) (holding that defendant's software was a product because "it is a highly technical tool used to create a graphic representation from technical data"). That electricity and software can be products comports with the Third Restatement's definition of "product" that Discord relies on. Mot. 17. Discord quotes the first sentence of that definition—that a "product" is "tangible personal property distributed commercially for use or consumption"—but omits the next: "Other items, *such as* real property and *electricity*, are products *when the context of their distribution and use is sufficiently analogous to the distribution and use of tangible property* that it is appropriate to apply the rules stated in this Restatement." Restatement (Third) of Torts § 19(a) (emphasis added).

---

[7] In the heading for its argument on this issue, Discord states that its app is not a product *and* "the dangers of its use are obvious." Mot. 17. Discord does not again mention, much less develop, the obvious danger argument, so it is waived. *See Butler Aviation Int'l v. Whyte*, 6 F.3d 1119, 1128 (5th Cir. 1993) (emphasizing that to avoid waiver "an argument must be pressed, not merely intimated").

So this issue does not turn on tangibility. Rather, it hinges on whether the product defects alleged by Jane "are analogous to tangible personal property in the context of their use and distribution." *In re Social Media*, 702 F. Supp. 3d at 849 (citing Restatement (Third) of Torts § 19(a)). Jane asserts that Discord's app is defective because it has ineffective parental controls and safety settings. *See, e.g.*, Compl. ¶ 337(b) (failure to implement effective parental controls), ¶ 337(d) (failure to set default settings to the most protective option), ¶ 337(h) (failure to ban IP and MAC addresses of accounts associated with known abusers), ¶ 337(l) (failure to implement robust age and identity verification). Based on these defects, Discord's app is akin to tangible property because "[m]yriad tangible products contain parental locks or controls to protect children." *In re Social Media*, 702 F. Supp. 3d at 849. Consider "parental locks on bottles containing prescription medicine" and "parental locks on televisions that enable adults to determine which channels or shows young children should be permitted to watch unsupervised." *Id.*

Discord characterizes Jane's product-liability claims as targeting intangible services that it provides involving "ideas," "words," and other content. Mot. 17. But that characterization of Jane's claims ignores her allegations that the app's defects all relate to ineffective parental controls and safety measures. *See* Compl. ¶ 337(a)-(m). These defects are "content-agnostic" because they "primarily relate to the manner in which young users are able to access" Discord's app, "including whether their age is accurately assessed during the sign-up process and whether, subsequent to signing up, their activity and settings can be accessed and controlled by their parents." *In re Social Media*, 702 F. Supp. 3d at 849.

Discord's cases should be disregarded. The courts in *Jacobs v. Meta Platforms, Inc.*, *Zienck v. Snap, Inc.*, and *Jackson v. Airbnb* "offered minimal, if any, rationale" for classifying the apps there as services and not products. *Id.* at 843 & n.36.

### C.    Jane Has Alleged that Discord Owed Her Multiple Duties

Discord (remarkably) contends that it owed no duty whatsoever to Jane—a minor user of an app it said it designed to be safe for children. In effect, Discord likens itself to a "mere bystander who did not create the dangerous situation and is not required to become the good Samaritan and prevent injury to others." *Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942). Discord ignores the allegations in the Complaint, which detail the affirmative and deliberate actions the company took that created the foreseeable risk that Jane and other minors would be sexually exploited on its app. Discord thus assumed several fundamental duties to Jane. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983) ("One who voluntarily enters an affirmative course of action affecting the interests of another is regarding as assuming a duty to act and must do so with reasonable care."). These include (1) the general duty to exercise reasonable care to avoid foreseeable injury to others (Count 2: Negligence – General); (2) the duty to warn of the known dangers of its app (Count 3:  Negligence – Failure to Warn); (3) the duty to exercise ordinary care in the design of its app (Count 4: Negligence – Unreasonable Design); and (4) the duty to exercise reasonable care in rendering parental control and account safety services (Count 5: Negligent Undertaking).

***Count 2: Negligence – General.*** "Under Texas law, one has a duty to exercise reasonable care to avoid foreseeable injury to others." *Hayes v. United States*, 899 F.2d

23

438, 444 (5th Cir. 1990) (citation omitted); *see also Gillis v. Cmty. Prods., LLC*, No. 22-cv-00080, 2024 U.S. Dist. LEXIS 154619, at *21 (W.D. Tex. Aug. 28, 2024) (emphasizing that the "most basic common law duty" is "the general duty to exercise reasonable care to avoid foreseeable injury to others"). So the duty that Discord owed Jane here is "merely the application of the general duty to exercise reasonable care to avoid foreseeable injury to others." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

Jane alleges that Discord's "own actions"—which were "independent of any actions taken by a third party"—created an unreasonable risk of harm to her and other minor users. Compl. ¶ 250; *see also id.* ¶ 237 (asserting that Discord "owed Plaintiff a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app and not to create an unreasonable risk of harm from and in the use of its app"). For example, Discord implemented ineffective parental controls that it knew created an illusion of safety for parents and allowed users to create accounts without any form of age or identity verification. *Id.* ¶¶ 194-201. Discord also facilitated the unsupervised or hidden use of its app "by adopting protocols that allow youth users to change their own safety settings or parental controls, and create multiple and private accounts." *Id.* ¶¶ 199, 250(c). And Discord maintained these dangerous features despite clear notice—from years of public reports—that they created a significant risk of harm to kids. *Id.* ¶¶ 164-76, 250(c).

Discord does not mention its basic duty to avoid creating an unreasonable risk of harm to children like Jane, much less show it is inapt here. Nor could it. The "foremost and dominant consideration" in a duty analysis is the "foreseeability of the risk." *Long v.*

24

*Williams*, No. 09-cv-3323, 2010 U.S. Dist. LEXIS 163828, at *20 (S.D. Tex. July 29, 2010) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). Nothing was more foreseeable to Discord than the risk of what happened to Jane as the result of the company's conduct in designing, marketing, and operating its app. Jane cites case after case, article after article, report after report involving children who were similarly exploited through Discord. *See* Compl. ¶¶ 164-76. Given the immense harm that Discord's conduct has caused Jane and thousands of other children, Discord should bear the burden of operating its platform in a reasonable way. *Long*, 2010 U.S. Dist. LEXIS 163828, at 20 (foreseeability is "weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant"). Requiring Discord to comply with this duty of care "would benefit the community at large" and would impose minimal burden because Discord has "the technological and financial means to avoid" these risks of harm. Compl. ¶¶ 247-48.

Applying this basic duty of care to Discord breaks no new ground. Courts have consistently held that online apps like Discord owe a duty of care to their users. *See Colvin v. Roblox Corp.*, 725 F. Supp. 3d 1018, 1026 (N.D. Cal. 2024) (holding that Roblox owed a duty "to use reasonable care in its conduct, the creation and management of its platform, to avoid creating an unreasonable risk of harm to others"); *Social Media Cases*, JCCP No. 5255, 2023 Cal. Super. LEXIS 76992, at *70 (Cal. App. Ct. 2023) (holding that operators of social media apps such as Snapchat and Instagram "had a duty not to harm the users of Defendants' platforms through the design and/or operation of those platforms" because "all persons are required to prevent others from being injured as the result of their conduct").

Discord's cases are not to the contrary. In *Doe v. MySpace, Inc.*, the court rejected a claim on the ground that it purportedly sought to hold MySpace liable based simply on the company's provision of a service akin to that offered by a "phone company" or "delivery service" company. 474 F. Supp. 2d 843, 850-52 (W.D. Tex. 2007) (citation omitted). Similarly, in *Twitter, Inc. v. Taamneh*, the Court addressed the scope of aiding-and-abetting liability and found it lacking because the plaintiffs' allegations focused "less on affirmative misconduct and more on passive nonfeasance." 598 U.S. 471, 499 (2023). That is not this case.[8] Jane seeks to hold Discord liable for its affirmative actions in designing, creating, and falsely representing a platform that increases the foreseeable risk of harm to Jane and other children. Discord cannot disregard the duty of reasonable care that it assumed as a result of its actions.

**Negligence – Failure to Warn (Count 3).** Discord's actions in creating and operating its app also imposed a basic duty to warn of known dangers. Texas law recognizes "a duty to warn on the part of the person who created a dangerous situation"—even "without negligence on his part." *Ford Motor Co. v. Dallas Power & Light Co.*, 499 F.2d 400, 413 (5th Cir. 1974) (citing *Buchanan v. Rose*, 159 S.W.2d 109, 110 (1942)). Because Discord's conduct in creating, designing, and operating its app "created the risk that child users of [its] app would be subject to grooming, sexual abuse, and sexual exploitation,"

---

[8] *A.B. v. Salesforce.Com* is also not applicable here. Jane is not asserting that Discord has a "duty to monitor what its customers do with its product post-sale or to prevent them from engaging in criminal acts." 2021 U.S. Dist. LEXIS 181885, at *13. As discussed above, Jane does not contend that Discord had a duty to monitor anything on its app or to detect and stop criminal conduct occurring on its app.

Compl. ¶ 268, Discord owed a duty to warn Jane and other minor users of these known risks, *see Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 591 (Tex. 1986) (addressing a "negligent failure to warn claim" and holding that a designer, "who has intimate knowledge of a designed product," has "a duty to inform users of hazards associated with the use of its products"); *cf. Ford*, 499 F.2d at 413 (holding that a company that "created, maintained and operated [a] dam, the presence of which posed nearly all problems of proper conduct," owed a duty to warn the public about the risk of flooding from the dam).

The only failure-to-warn case relied on by Discord confirms that a person assumes a duty to warn if their actions create a risk of harm to the plaintiff. Discord cites *Ethridge v. Samsung SDI Co.*, Mot. 18-19, which asserts that "there is no general 'duty to warn of dangers' from third parties." 604 F. Supp. 3d 556, 560 (S.D. Tex. 2022) (citation omitted). But the case cited by the *Ethridge* court for this statement makes clear that a party that "creates a dangerous situation" owes a duty to warn of that danger. *San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 319-20 (Tex. App. Ct. 2000).

***Negligence – Unreasonable Design (Count 4).*** As the designer of the Discord app, Discord owed Jane "a duty to exercise ordinary care in the design of [that app]." *Alm*, 717 S.W.2d at 590-91; *see also* Compl. ¶ 286 ("[Discord] owed a duty to all reasonably foreseeable users to design a safe app."). Discord cannot seriously dispute that it owed Jane this standard duty.

***Negligent Undertaking (Count 5).*** For Jane's negligent-undertaking claim, Discord assumed a duty to Jane because it engaged in an "affirmative course of action" through which it rendered services that it knew or should have known were "necessary for the

27

protection of [Jane]." *In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 660 (Tex. 2023) (citation omitted). Discord "rendered parental control services and account safety services to" Jane's mother that it knew "were necessary for the protection of minor users." Compl. ¶¶ 305-06. By undertaking to provide such services, Discord assumed a "duty to exercise reasonable care in performing this undertaking." *Colonial Sav. Assoc. v. Taylor*, 544 S.W.2d 116, 120 (Tex. 1976). Jane has thus sufficiently alleged a duty for this claim.

### D.    Jane Has Pleaded a Plausible Fraudulent Concealment Claim

Jane's fraud claim against Discord is based on concealment. Fraudulent concealment is "[f]raud by non-disclosure"—*i.e.*, "the defendant deliberately failed to disclose material facts." *Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019). Jane alleges that Discord failed to disclose the "defective conditions of its app" that caused her to be sexually exploited and assaulted. *See* Compl. ¶¶ 209-13, 220, 225. Jane further alleges that these defects were known only to Discord and that, had Discord disclosed these defects, her mother would not have permitted her to use the app. *Id.* ¶¶ 223-29. Nothing more is required to state a fraudulent concealment claim and satisfy Rule 9(b). *See McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1366, 1368-69 (N.D. Ga. 2013) (holding that plaintiffs asserted a plausible claim of fraudulent concealment under Texas law and Rule 9(b) because they alleged that defendant failed to

28

disclose a safety defect and that they would not have purchased the product had they known of the defect). The Court should reject Discord's attempt to dismiss this claim.[9]

<u>**CONCLUSION**</u>

For the foregoing reasons, Discord's motion should be denied.

Dated: July 25, 2025                    Respectfully submitted,

                                        /s/ Paige Boldt
                                        Paige Boldt, Attorney in Charge
                                        State Bar No. 24082626
                                        SDTX No. 3108588
                                        325 North Saint Paul Street, Suite 3100
                                        Dallas, TX 75201
                                        Telephone: (469) 966-2232
                                        Facsimile: (215) 735-2211
                                        pboldt@anapolweiss.com

                                        Alexandra M. Walsh*
                                        Kristen Feden*
                                        D. Patrick Huyett*
                                        One Logan Square
                                        130 North 18th Street, Suite 1600
                                        Philadelphia, PA 19103
                                        Telephone: (215) 608-9645
                                        Facsimile: (215) 735-2211
                                        awalsh@anapolweiss.com
                                        kfeden@anapolweiss.com
                                        phuyett@anapolweiss.com

                                        **COOPER MASTERMAN**
                                        Davis Cooper (admitted *pro hac vice*)
                                        Joseph Masterman (admitted *pro hac vice*)

---

[9] The Court should reject Discord's argument that Exhibits A through D of its motion are incorporated by reference into the Complaint and can be considered. Mot. 4 n.2. While these documents are briefly referenced in the Complaint, *see* ¶¶ Comp. 146, 176, they are not "central to plaintiff's claims," and Discord does even attempt to argue that they are. *See Inclusive Cmtys. Project v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

1717 Pennsylvania Ave. NW, Suite 1025
Washington, DC 20006
Telephone: (202) 866-0171
davis@coopermasterman.com
joe@coopermasterman.com

*Pro Hac Vice* motions pending

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2025, I presented the foregoing document to the Clerk of Court for filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/ Paige Boldt*
Paige Boldt

31